**634**

Dean K. BRUCH and James
R. McTigue

v.

U.S. COAST GUARD, et al.

Civ. A. No. 89–4479.

United States District Court,
E.D. Pennsylvania.

April 20, 1990.

James F. Young, Krusen, Evans &
Byrne, Philadelphia, Pa., for plaintiffs.

U.S. Coast Guard by Deborah Fitzgerald,
Asst. U.S. Atty.

1. What amounts to the entire record of the
proceedings below appears to be attached as
appendices to the complaint.

MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs, licensed docking masters, filed
this action on July 14, 1989, seeking recov-
ery of attorney's fees and costs expended
in successfully defending charges of mis-
conduct brought by the U.S. Coast Guard
in 1988. The facts of the underlying litiga-
tion [1] are that plaintiffs were each cited for
violations of 46 U.S.C. § 8502, which re-
quires that a "coastwise seagoing vessel"
be under the control of a pilot licensed
pursuant to 46 U.S.C. § 7101. That section
in its turn sets different requirements for
the issuance of different types of licenses,
and further provides that, in some cases,
pilots obtain special certification for the
waters on which they will operate vessels.

In this case, the particular misconduct
which the plaintiffs were accused of was
performing docking maneuvers without the
benefit of first class pilot licenses with
Philadelphia endorsements. Being cited
for misconduct of this nature apparently
put the plaintiffs' licenses, and therefore
their livelihoods, at risk; it is not surpris-
ing that the record reflects not only a vig-
orous defense against the citations, but
also, after an initial adverse ruling, post-tri-
al proceedings. Captains Bruch and McTi-
gue were able to get the record reopened;
and ultimately, the initial adverse ruling
was reversed, on the ground that § 7101
has been neither consistently enforced nor
consistently interpreted by the Coast
Guard.[2]

Having prevailed on the merits, Captains
Bruch and McTigue presented fee applica-
tions to the Department of Transportation,
based on the Equal Access to Justice Act, 5
U.S.C. § 504(a). Those applications were
contested by the government on the
grounds that the position taken by the
Coast Guard was not unreasonable, and
that the billing rate sought by counsel was
excessive. In a Decision and Order dated
May 16, 1989, the applications were denied
by ALJ Fitzpatrick, on the ground that

2. January 5, 1989, Decision and Order of Ad-
ministrative Law Judge Peter A. Fitzpatrick,
found in the portions of the record annexed to
the complaint.

though the misconduct citations were properly dismissed because of inconsistent enforcement of 46 U.S.C. § 7101, the Coast Guard was not unreasonable in seeking enforcement of that statute. That decision was appealed to the Coast Guard Headquarters,[3] and the Commandant of the Coast Guard also denied plaintiffs' fee applications. At that point, plaintiffs initiated this action, still seeking recovery of fees under § 504(c)(2) of the Equal Access to Justice Act.

The subject of this memorandum is the government's motion to dismiss the complaint for lack of subject matter jurisdiction.

### The Government's Motion to Dismiss

The government's argument in favor of dismissal has two prongs. First the government argues that the plaintiffs have failed to exhaust their administrative remedies by failing to appeal the denial of the fee application to the National Transportation Safety Board ("NTSB") pursuant to 49 U.S.C.App. § 1903(a)(9). That section provides in pertinent part that the NTSB shall:

> review on appeal ... (B) the decisions of the Commandant of the Coast Guard, on appeals from the orders of any administrative law judge revoking, suspending, or denying a license, certificate, document, or register in proceedings under section 239 of Title 46; sections 239a and 239b of Title 46; or section 216b of Title 46.[4]

One of the referenced sections provides for suspension or revocation of a license if the holder "has violated or failed to comply with ... any ... law or regulation intended to promote marine safety or to protect navigable waters."[5] Clearly, if the final decision of ALJ Fitzpatrick had revoked or suspended plaintiffs' licenses, and that decision had been upheld by the Commandant of the Coast Guard, then the NTSB, pursu-

ant to 49 U.S.C.App. § 1903(a)(9)(B), would have been the tribunal to which plaintiffs' appeals should initially have been directed. Moreover, no United States court could have reviewed such a revocation or suspension *unless* the NTSB had first reviewed the action of the ALJ pursuant to the mandate of 49 U.S.C.App. § 1903(a)(9)(B), thereby exhausting all administrative avenues. *See, e.g., Blackwell v. United States,* 586 F.Supp. 947 (S.D.Fla.1984). Using these conclusions as its basis, the government asserts that the decision of the Commandant sustaining ALJ Fitzpatrick's denial of plaintiffs' fee application—a fee application which stemmed from a Coast Guard revocation and suspension proceeding—is also subject to NTSB review. If that is the case, the instant action must be dismissed for failure to exhaust administrative remedies, since plaintiffs did not appeal the fee denial to the NTSB. *Cf. Blackwell, supra; Desvaux v. Siler,* 1976 A.M.C. 2352 (S.D.N.Y.1976).

The second prong of the government's motion to dismiss is 49 U.S.C.App. § 1903(d), which states:

> Any order, affirmative or negative, issued by the [NTSB] under this chapter shall be subject to review by the appropriate court of appeals of the United States or the United States Court of Appeals for the District of Columbia, upon petition filed within 60 days after the entry of such order, by any person disclosing a substantial interest in such order. Such review shall be conducted in accordance with the provisions of Chapter 7 of Title 5.

Asserting once again that the plaintiffs must seek NTSB review of the Coast Guard Headquarter's denial of the fee petition, the government contends that only courts of appeals are vested with the power to review decisions stemming from a revocation and suspension proceeding. Thus

---

**3.** The record does not appear to provide any formal documentation of the decision by the Coast Guard Headquarters.

**4.** Sections 239, 239a, 239b and 216b of Title 46, all referred to in § 1903(a)(9)(B), were all repealed and replaced by Revised Title 46 sections

6101, 6301, 6303–5, 7701–7703 (formerly § 239), 7503(a), 7704(a), 2101(34), 7302(a) (formerly § 239a), 7503(b), 7704(b), (c) (formerly § 239b), and 9303–9304 (formerly § 216b).

**5.** 46 U.S.C. § 7703, formerly 46 U.S.C. § 239(g).

the government concludes that, even assuming exhaustion of administrative remedies, dismissal is mandated because review cannot be had in a district court.

*Plaintiffs' Reply*

Plaintiffs rely on 5 U.S.C. § 504(c)(2), a provision of the Equal Access to Justice Act, which provides, in pertinent part:

> If a party other than the United States is dissatisfied with a determination of fees and other expenses made under subsection (a), that party may, within 30 days after the determination is made, appeal the determination to the court of the United States having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication.

According to plaintiffs, this district court is a court "having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication." Plaintiffs identify three distinct bases for district court jurisdiction: (1) 28 U.S.C. § 1331, which provides for "original jurisdiction of all civil actions arising under the ... laws of the United States;" (2) 28 U.S.C. § 1333, which provides for "jurisdiction, exclusive of the courts of the States, of ... any civil case of admiralty or maritime jurisdiction;" and (3) the Administrative Procedures Act, 5 U.S.C. §§ 701–706, which provides for judicial review of agency decisions.

To rebut the government's assertion that a court of appeals is the only court of competent jurisdiction, plaintiffs argue that a court of appeals' jurisdiction, according to the administrative scheme, is invoked only when a decision by the NTSB is challenged. The statutory scheme only empowers the NTSB, in its turn, to review decisions of the Coast Guard Commandant which suspend or revoke—i.e., adversely affect—pilots' licenses. Since plaintiffs' licenses were neither suspended nor revoked by the Commandant, there could have been no review by the NTSB and, therefore, no

potential review by a court of appeals. As further, if negative, support for their position, plaintiffs note that the Administrative Orders Review Act, 28 U.S.C. §§ 2341–2351, which describes instances of court of appeals review of administrative decisions, does not include controversies of the sort presented here.

*Discussion* [6]

5 U.S.C. § 504(c)(2) does not in terms confer subject matter jurisdiction upon a district court or any other court. Rather, it provides that a party may only seek review of a fee determination in a court jurisdictionally capable of reviewing "the merits of the underlying decision of the agency adversary adjudication."

If § 504(c)(2) is the starting point of this inquiry, the next question, logically, must be: does a district court have jurisdiction to review the "underlying decision of the agency adversary adjudication," that is, an agency decision addressing charges of violations of 46 U.S.C. § 7101?

Defendant hinges its demand for dismissal solely on the arguments, described above, that jurisdiction has been statutorily diverted, pursuant to 49 U.S.C.App. § 1903, either to the NTSB or, if administrative remedies have indeed been exhausted, to a court of appeals. Accordingly, I next will review the provisions of 49 U.S.C.App. § 1903.

*A.  49 U.S.C.App. § 1903*

Strictly construed, as applied to the record of these proceedings, § 1903 does not confer jurisdiction to review the "underlying decision" on either the NTSB or a court of appeals. According to § 1903(a)(9), the NTSB does not have statutory authority to review the decision of ALJ Fitzpatrick reinstating the plaintiffs' licenses, since that decision—the final decision of the "agency adversary adjudication" per § 504(c)(2)—was not a "decision[ ] of the Commandant of the Coast Guard, on

---

**6.** In the context of this proceeding, and as the issues have been developed by the parties, the argument relating to exhaustion of administrative remedies can also be analyzed as a jurisdictional argument—i.e., that jurisdiction to review plaintiffs' fees request lies in the NTSB, not in the district court. It is that formulation of the government's argument that will be used in the balance of this memo.

appeal[ ] from the orders of any administrative law judge revoking, suspending, or denying a license," per § 1903(a)(9)(B). In the absence of a decision by the Commandant which is adverse to a license holder, the review powers of the NTSB are not invoked; here, in fact, no decision was made by the Commandant pertaining to plaintiffs' licenses. Thus, according to the administrative review scheme, the NTSB does not have subject matter jurisdiction over the "underlying decision of the agency adversary adjudication," and § 1903(a)(9)(B), as applied to this case, does not vest jurisdiction to review the denial of the fee request in the NTSB.[7]

And, in turn, no court of appeals has jurisdiction to review the "underlying decision," since review by that court is keyed to review by the NTSB. Thus, I conclude that the statutory authority on which the government relies does not confer subject matter jurisdiction to review the "underlying decision" on either the NTSB or the court of appeals.

The government recognizes that jurisdiction is not directly authorized by the NTSB statutory scheme. However, the government contends that to find subject matter jurisdiction in any tribunal other than the NTSB and a court of appeals would make nonsense out of 5 U.S.C. § 504(c)(2).[8] Though detailed, the government argument on this point is repeated here:

> The defendant's interpretation of § 504(c)(2) as referring to the appeal route of the *kind* of "underlying decision" is a natural one, and is the only way of making sense of § 504(c)(2) as a jurisdictional grant. On this interpretation, and as applicable here, § 504(c)(2) grants to parties who prevail at the administrative level in a suspension or revocation proceeding a right to judicial review of a fee denial, and specifies that such parties are to appeal to the court

which hears appeals from final suspension and revocation decisions generally. In other words, a party using § 504(c)(2) to appeal a fee denial follows the appeal route he *would* have taken if he had lost the underlying case. This is the appeal route defendant traced in its motion to dismiss, and following that route to its end leads one to the court of appeals, not here.

> There is no other way of making sense of § 504(c)(2). Congress clearly intended this section to be a jurisdictional grant. Giving it either of plaintiffs' two readings made it empty, and required them to fall back on other possible sources of jurisdiction. However, Congress also clearly intended to specify in § 504(c)(2) which court was to hear appeals from administrative EAJA denials, so basing jurisdiction, as plaintiffs wish to, on an alternative course would frustrate the Congressional intent expressed in § 504(c)(2). Since either of plaintiffs' interpretations of § 504(c)(2) is ineffective to serve the Congressional purpose, and the defendant's interpretation is both rational and consistent with the intent of the Act, the defendant asks that its interpretation be adopted and its motion to dismiss be granted.

Government's Reply, pp. 5–6; emphasis in the original.

While the government's proposed construction of 5 U.S.C. § 504(c)(2) makes a certain appeal to statutory symmetry—that is, the notion that all appeals should go to the same court—it does not take adequate account of what Congress enacted in 49 U.S.C. § 1903. Insofar as the government invites me to rewrite the latter provision, and thereby purport to require the NTSB and the several courts of appeals to review decisions which either do not reach the Commandant or reach the Commandant but result in a decision favorable to the party

---

7. It follows, of course, that these plaintiffs, who appealed to the Commandant of the Coast Guard, have exhausted the administrative remedies available to them.

8. Curiously, the government bases this aspect of its argument on the purported intent of Con-

gress in enacting § 504(c)(2), and does not parallel that argument with a discussion of the Congressional intent in enacting § 1903. The question of subject matter jurisdiction can only be answered by interpreting § 1903.

against whom revocation or suspension proceedings have been brought, I decline that invitation. In § 1903 Congress vested in the NTSB very carefully limited review powers. As noted in the pertinent Senate Report:

Finally, the Board is authorized to review on appeal the denial[,] suspension, or modification of certain licenses dealing with the operation of aircraft and vessels after the Secretary of Transportation and the Commandant of the Coast Guard have made the initial determinations in their respective spheres ...

\*  \*  \*  \*  \*  \*

Subsection (d) authorizes any person who discloses a substantial interest in any order of the Board to seek judicial review of that order in the appropriate U.S. Court of Appeals.

S.Rep. No. 1192, 93d Cong., 2d Sess., at 43–44, (1974) [9]

Given Congress' purpose to give the NTSB only limited review powers, the government's urging that I send plaintiffs off to "follow the appeal route [they] *would* have taken if [they] had lost the underlying case" is tantamount to urging that I send these plaintiffs on a trip to nowhere, since that route is only available to them if they indeed had lost the underlying case.

### B.  5 U.S.C. § 703

Plaintiffs' argument that, if subject matter jurisdiction does not lie in the NTSB or the court of appeals, then it must lie in this court by default, is one which has been accepted by courts in several circuits, including the Third Circuit. It is the law of the Third Circuit that, where no other statute designates a particular court for judicial review of an administrative decision, jurisdiction will lie in the district courts pursuant to 5 U.S.C. § 703, which states in relevant part:

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.... Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

*See e.g., Thompson v. U.S. Dept. of Labor,* 813 F.2d 48, 51 (3d Cir.1987) (regarding the Department of Labor); *Illinois v. Schweiker,* 707 F.2d 273, 277–78 (7th Cir.1983) (regarding Secretary of Health and Human Services); *Etheridge v. Schlesinger,* 362 F.Supp. 198, 200–201 (E.D.Va.1973) (regarding the Naval Reserves).[10] Since no other court has review of the "underlying decision," under § 703, as interpreted by

---

**9.** The House acquiesced in this portion of the Senate proposal. H.R.Rep. No. 1589, 93d Cong., 2d Sess., at 31–35 (1974).

The limited review afforded the NTSB in § 1903 is perhaps best understood when that section is seen in the context of the entire enactment. Public Law 93–633 was originally introduced by the Senate with the following purpose in mind: to "increase the operational safety of all modes of transportation and thereby to reduce loss of life, personal injury, and damage to property." S.Rep. No. 1192, 93d Cong., 2d Sess., at 1, (1974). The specific targets of the bill, in both its introductory and final form, were the railroads, which had fallen into disrepair, and, more generally, the movement of hazardous materials. *Id.* Marine transportation, closely regulated by both the Coast Guard and the Merchant Marine Subcommittee, was not viewed as being particularly unsafe; and NTSB review was not meant to be extensive:

While the Coast Guard has been successful in assuring a relatively safe network of marine transportation, this legislation is designed to assure that the Secretary of Transportation has the regulatory and enforcement authority to insure the safe transportation of hazardous materials in all modes.

*Id.,* at 92, Supplemental Views of Mr. Long. Limited review capacity is consistent with that purpose; it is likewise not a technique unique to these administrative circumstances. *See, e.g., Pennsylvania v. Heckler,* 730 F.2d 923, 925–27 (3d Cir.1984) (discussing limits on court of appeals review in Social Security grant processes).

**10.** *See generally, Association of National Advertisers, Inc. v. F.T.C.,* 565 F.2d 237, 239 (2d Cir. 1977) ("Where no statute specifies the procedure and court for review, this section intends a district court proceeding.")

the Third Circuit, subject matter jurisdiction lies in this court. Accordingly, plaintiffs may seek recovery of fees pursuant to the Equal Access to Justice Act in this court.

### Conclusion

For the foregoing reasons, the government's motion to dismiss will be denied in an accompanying order.

### ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED that defendant's motion to dismiss the complaint is DENIED.

It is further ORDERED that the following schedule for disposition of this case shall be in effect:

1. plaintiffs' summary judgment motion shall be filed within 20 days of the date of this order; and

2. any government response shall be filed within 20 days of plaintiffs' filing.