**Dean K. BRUCH and James R. McTigue**

v.

**U.S. COAST GUARD, et al.**

**Civ. A. No. 89-4479.**

United States District Court,
E.D. Pennsylvania.

Oct. 19, 1990.

James F. Young, Philadelphia, Pa., for plaintiffs.

Deborah Fitzgerald, Philadelphia, Pa., Asst. U.S. Atty., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs bring this appeal under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a), for the sole purpose of recovering costs and fees that they incurred in successfully defending themselves in prior administrative proceedings.

Plaintiffs work in the maritime business as "docking masters." In June of 1988, they were cited by the Coast Guard for allegedly docking boats without the requisite license.[1] Plaintiffs vindicated themselves of the alleged misconduct by prevailing against the government in a subsequent administrative hearing,[2] but were left bearing the expense of that litigation; in a separate ruling, the administrative law judge denied their application for recovery of costs and fees.[3]

---

1. Plaintiffs were specifically charged with violations of 46 U.S.C. § 8502. Each was issued a citation. Their originally separate actions have now been consolidated.

2. *United States v. Dean Bruch*, Docket No. 05–0019–PAF–88–P, and *United States v. James Ray McTigue*, Docket No. 05–0020–PAF–88–P. Decision and Order of Peter A. Fitzpatrick, United States Administrative Law Judge, Fifth Coast Guard District, Jan. 5, 1989 (attached to complaint as Exhibit I) (hereinafter "Decision on the Merits").

3. *United States v. Dean Bruch*, Docket No. 05–0019–PAF–88–P, and *United States v. James Ray McTigue*, Docket No. 05–0020–PAF–88–P. Decision and Order on Application for Attorney Fees and Expenses, Peter A. Fitzpatrick, United States Administrative Law Judge, Fifth Coast Guard District, May 16, 1989 (attached to complaint as Exhibit M) (hereinafter "Decision on Costs and Fees"). Although the record provides no formal documentation of such, Judge Fitzpatrick's decision on costs and fees was apparently appealed to Coast Guard Headquarters, and the Commandant of the Coast Guard also denied plaintiffs' fee applications. For further elaboration of the

Plaintiffs filed this proceeding against the Coast Guard and Admiral Paul A. Yost, the Commandant of the Coast Guard, on July 14, 1989, seeking to reverse the judgment below on the issue of costs and fees. By memorandum and order, filed April 20, 1990, 736 F.Supp. 634, I denied the government's motion to dismiss the appeal for lack of jurisdiction. Now before me are two further motions: 1) the government's motion for reconsideration on the question of jurisdiction, and 2) plaintiffs' motion (and the government's cross-motion) for summary judgment.

I.

*Jurisdiction*

A.

■ The EAJA states in pertinent part: If a party other than the United States is dissatisfied with a determination of fees and other expenses made under subsection (a), that party may, within 30 days after the determination is made, appeal the determination to the *court of the United States having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication.*

5 U.S.C. § 504(c)(2) (emphasis added). Relying on this language, the government contends that jurisdiction properly lies, not in this district court, but in the appropriate court of appeals. The government's argument, though complicated, seems to depend on the following course of reasoning: By statute, jurisdiction lies with the court of appeals to review decisions made by the National Transportation Safety Board (NTSB), which sits atop the relevant administrative hierarchy. See 49 U.S.C. § 1903(d). Thus, in accordance with the EAJA, the court of appeals would be the court "having jurisdiction" had plaintiffs not prevailed on the merits of their underlying claim before an administrative judge, as they did, but instead found themselves in the unfortunate position of having to perfect an appeal at each remaining level of the administrative hierarchy, culminating with a final adverse disposition by the NTSB. Even though in this case plaintiffs relieved themselves of the burden of having to run the entire administrative gamut by obtaining a favorable disposition at an intermediate stage, the government submits that the question of which court has jurisdiction should be addressed *as if* all possible administrative avenues had been exhausted.

As I concluded when encountering essentially the same argument advanced by the government in support of its prior motion, I conclude again here: the government's argument is unconvincing not only because it rests on a hypothetical theory of administrative exhaustion not germane to the procedural history of this case, but also because the EAJA does not by its express terms confer jurisdiction on any particular level of the federal judiciary. The statute indeterminately designates "the court of the United States having jurisdiction." Such language, rather than pinpointing a specific forum, simply announces that jurisdiction lies in the court that would otherwise have it—whether that court be a district court, a court of appeals, the Supreme Court, or the Court of Claims.

In this case, the court of appeals is clearly not, as the statute calls for, the court "having jurisdiction." As noted above, pursuant to 49 U.S.C. § 1903(d), the court of appeals *would* have jurisdiction to review a final decision by the NTSB. But there is no statute that confers jurisdiction upon the court of appeals where, as here, a final determination is made midway through the administrative hierarchy, so that the matter never reaches the NTSB. It should be noted, moreover, that a matter of this nature, involving solely the question of costs and fees, would in all likelihood never reach the NTSB, much less the court of appeals, because the NTSB appears to have narrowly prescribed statutory authority only to review the merits of revocation and suspension decisions and not to address extraneous matters, falling beyond

procedural history of this case, see this court's memorandum and order of April 20, denying the government's motion to dismiss for lack of jurisdiction.

their expertise, such as requests for reimbursement of incidental costs and fees.[4]

■ It is the law of the Third Circuit that, absent any specific statutory designation, jurisdiction to review an administrative decision lies, by default, in the district courts, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 703. See *Thompson v. United States Dept. of Labor*, 813 F.2d 48, 51 (3d Cir.1987) and other authorities cited in memorandum accompanying order of April 20, 1990, 736 F.Supp. at 638. Accordingly, I conclude that it is the district courts which must be understood as the courts "having jurisdiction" over a matter of this kind arising under the EAJA.

### B.

■ Not satisfied with this result, the government advances a further line of argument: Default jurisdiction does not lie under the APA because plaintiffs seek "money damages," a form of relief specifically disallowed by the APA. See 5 U.S.C. § 702 (providing for judicial review of agency action "in a court of the United States seeking relief other than money damages"). Furthermore, where money damages not sounding in tort are sought against the United States, the jurisdictional imperatives of the Tucker Act, 28 U.S.C. § 1346(a)(2), § 1491(a), preempt those of the APA. See *Hahn v. United States*, 757 F.2d 581, 585–86 (3d Cir.1985). Under the Tucker Act, the district courts enjoy concurrent jurisdiction with the Court of Claims as long as the amount of the relief requested does not exceed $10,000. § 1346(a)(2). Yet here, so the government puts it, "plaintiff [sic] seeks [sic] award of fees and expenses totalling $19,178.33" which exceeds the jurisdictional grant to the district courts, and thus brings this action within the exclusive jurisdiction of the Court of Claims.[5]

■ Whether jurisdiction lies under the APA or under the Tucker Act turns on whether the claim at issue can properly be characterized as one for "money damages." If money damages are at stake, then there can be no doubt that the Tucker Act is indeed the controlling statute. See *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

In *Bowen*, the Supreme Court recently explored the meaning of the term "money damages" as it appears in the APA.

---

**4.** The text of 49 U.S.C. § 1903(d) states in pertinent part:

Any order, affirmative or negative, issued by the [NTSB] under this chapter shall be subject to review by the appropriate court of appeals of the United States or the United States Court of Appeals for the District of Columbia, upon petition filed within 60 days after the entry of such order, by any person disclosing a substantial interest in such order. Such review shall be conducted in accordance with the provisions of Chapter 7 of Title 5.

In the memorandum accompanying my order of April 20, 1990, 736 F.Supp. at 636–638, I discuss at length the meaning and legislative history of this statute. I do not repeat that discussion here, but simply incorporate my prior remarks by reference. Suffice it to say that, in moving for reconsideration, the government has not undertaken to rebut my understanding of the meaning and purposes of the statute.

**5.** Government's brief in support of its motion for reconsideration at p. 6.

Although the government's formulation initially overlooked the fact that there are two plaintiffs, and that their aggregate demand when split in half would not exceed the district

court's jurisdictional limit, see *Baker v. United States*, 722 F.2d 517 (9th Cir.1983) (jurisdictional limit is not violated when plaintiffs combine claims that are individually less than $10,000 but cumulatively exceed that amount), the government argues in a later submission that plaintiff Bruch's claims, taken alone, exceed $10,000. See government's reply brief at p. 2. Apparently, therefore, the government concedes, at least by implication, the jurisdiction of this court, under the Tucker Act, with regard to the claims submitted by plaintiff McTigue.

Because I will conclude that this court's jurisdiction is conferred by the APA, and not by the Tucker Act, I need not consider whether plaintiff Bruch's claims do in fact exceed the Tucker Act's prescribed limitations. Suffice it to say that, according to the government's calculations, plaintiff Bruch's claims exceed the jurisdictional limit only by the relatively minor amount of approximately $200, and plaintiff Bruch would be entitled to waive his rights to the $200 excess in order to keep his claim before the district court. See *Hahn, supra*, 757 F.2d at 590 (remanding to district court with directions to either permit plaintiffs to amend their complaint to waive damages in excess of $10,000 or to transfer those claims to the Claims Court).

There, the Court was considering whether a federal district court had jurisdiction under the APA to review a final order of the Secretary of Health and Human Services refusing to reimburse a state for a category of expenditures under its Medicaid program. If the district court were to decide, in effect, that such reimbursement was due, relief would necessarily take the form of "money," at least as that term is commonly understood. The question, therefore, was whether an award of money should necessarily be characterized as an award of "money damages" in accordance with the technical legal signification of that term.

In writing for the majority, Justice Stevens stressed the "long recognized" distinction between

> an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay, or for 'the recovery of specific property or *monies.*'

*Id.* at 893, 108 S.Ct. at 2732 (citing *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 [1949]) (emphasis added by Justice Stevens). Accordingly, Justice Stevens reasoned, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' " *Id.* Justice Stevens also relied heavily and quoted extensively from a circuit opinion written by Judge Bork, *Maryland Dept. of Human Resources v. Dept. of HHS,* 763 F.2d 1441 (D.C.Cir. 1985), portions of which I recite here:

> Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)....
> ....Neither the House nor Senate Reports [concerning the proposed revisions

of § 702 of the APA] intimates that Congress intended the term 'money damages' as a shorthand for 'whatever forms of monetary relief would be available under the Tucker Act.' To the contrary, the federal sovereign immunity case law, which the Reports discuss at length ... suggests that Congress would have understood the recovery of specific monies to be specific relief in this context....
> .... It seems to us, then that the legislative history supports the proposition that Congress used the term 'money damages' in its ordinary signification of compensatory relief.

487 U.S. at 895, 899–900, 108 S.Ct. at 2732, 2734–35; 763 F.2d at 1447–48. On the basis of such discussion and analysis, the Court held in *Bowen* that the requested relief would not take the form of "money damages," technically understood, and that, therefore, the district court maintained jurisdiction under the APA to review the Secretary's final order.

Guided by the Court's analysis in *Bowen,* I conclude that the present action does not involve a claim for "money damages." At issue is an application for recovery of litigation costs and attorneys' fees. An award of costs and fees is not a damage award. Instead, it simply repays the labor involved in striving to obtain a damage award. Unlike a damage award, an award of costs and fees in no way rectifies the grievance initially giving rise to a case; it does not, in Judge Bork's words, "substitute for a suffered loss." Rather than being compensation, costs and fees arise solely as incidents of the effort to achieve compensation. The underlying idea is to regain specific monies expended rather than to find a surrogate for what has unfortunately been denied. In that sense, an award of costs and fees, though monetary, and though utilizing the same currency as a damage award, is more akin to specific relief than to damages traditionally understood.

Since "money damages" are not at issue here, the Tucker Act has no application, and this court maintains jurisdiction by virtue of the APA.

## II.

### *Summary Judgment*

In certain circumstances the EAJA entitles parties prevailing against the government in an administrative adjudication to an award of costs and fees. According to the specific terms of that statute, "an agency that conducts an adversary adjudication" must award "fees and other expenses" to prevailing private parties "unless the adjudicative officer of the agency finds that the position of the agency was *substantially justified* or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1) (emphasis added). Thus, the critical question on this appeal is whether the Coast Guard's position—the stance it took in the administrative hearing, its basic rationale for the issuance of the citations—was "substantially justified."

In contending that the Coast Guard lacked substantial justification, plaintiffs stress that, at the time of the alleged misconduct, the local Coast Guard officials issuing the citations were acting against a backdrop of administrative chaos and confusion. Working under a complex and ambiguous statutory scheme, the Coast Guard had yet to formulate any clear, nationwide agency policy governing the licensing of docking masters. Instead, each local office apparently pursued its own interpretation of the governing law. The maritime industry thus received conflicting directives, depending on locale, and at times conflicting directives even within the same locale. Indeed, it was with this lack of uniformity in mind that Administrative Law Judge Fitzpatrick decided to acquit plaintiffs of their alleged misconduct:

> It is my opinion that the [plaintiffs'] claims of unfairness and denial of due process are well founded. I am persuaded *on this record* that the application of 46 USC 8502 to docking masters on qualifying vessels is not self evident and that the agency has not given notice of the statute to the maritime industry throughout the country. This is particularly important here since these mariners come from other states and were not familiar with the interpretation of the

statute at Philadelphia. Moreover, the decisions of the Commandant are not clear as to exactly what the licensing requirements of docking masters are. Also, part of the confusion stems from the unusual statutory scheme enacted by Congress for regulating pilots. Finally, the evidence here shows that an important Coast Guard official, who should be aware of the agency's interpretations of the law, has confused the public and issued interpretations of the statute at odds with enforcement efforts at Philadelphia.

. . . .

A national policy detailing the licensing of docking pilots on all vessels needs to be addressed and if necessary, Congressional action encouraged anew. The state of the law today is marked by confusion which urgently demands clarification.

Decision on the Merits, *supra*, at pp. 13–14, 20–21 (emphasis in original).

However, when confronting the separate issue of costs and fees, Judge Fitzpatrick held, and the government continues to maintain, that, even though the issuance of the citations might have been somewhat unfair given the general ambiguity overshadowing the question of licensing, the Coast Guard's position on the merits could, nevertheless, be characterized as "substantially justified" to the degree required to deny an application for costs and fees. See Decision and Order on Costs and Fees, *supra*. Judge Fitzpatrick explained that, prior to the issuance of the citations, he had decided two cases which established a clear legal foundation, at least in his jurisdiction, for the issuance of the citations in the circumstances giving rise to this case. In that sense, he reasoned, the local Coast Guard officials who issued the citations were simply enforcing well-founded law:

> It is relevant to note here that [the present matter arose] within 60 days of my decisions in *U.S. Coast Guard v. John Lewis Patton* (05–0010–PAF–88), and *U.S. Coast Guard v. Thomas P. Sullivan* (05–0009–PAF–88) (May 20, 1988). In those cases which involved the

identical issue of law raised here, I held that 46 USC 8502 expressly requires who is in control of a qualified, coastwise vessel to hold a Federal pilot license. I noted that there are no exceptions to the statute's broad sweep and that the docking pilots, Patton and Sullivan, violated that requirement when they handled vessels in the Port of Philadelphia without the appropriate licenses.

When the instant cases were filed, the Investigating Officer reasonably relied upon the interpretation of law described above and this Judge's recent decisions. As the evidence developed in these cases however, it became clear, for the first time, that knowledgeable industry officials and important officers in the Coast Guard itself, did not have a clear understanding of the statute despite its seemingly unambiguous language.

*Id.* at 6–7.[6]

■ I must address the issue of whether the Coast Guard's position was "substantially justified" in light of the Supreme Court's recent discussion of precisely that phrase in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). There, writing for the majority, Justice Scalia held that appellate review of a fee determination under the EAJA is to be conducted in accordance with a "deferential, abuse-of-discretion" standard of review. *Id.* at 560, 108 S.Ct. at 2547.[7] Justice Scalia also held that the phrase "substantially justified" does not mean "justified to a high degree," but rather "justified

in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 565, 108 S.Ct. at 2550. In responding to and rejecting Justice Brennan's position that the phrase calls for a higher degree of justification than "mere[]" reasonableness, see *id.* at 575, 108 S.Ct. at 2555 (Brennan, J., dissenting), Justice Scalia noted that "a position can be justified even though it is not correct, and we believe it can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n. 2, 108 S.Ct. at 2550 n. 2; see also *Russell v. Heckler*, 866 F.2d 638 (3d Cir. 1989).

■ Accordingly, in following *Pierce,* I am not required to determine whether the Coast Guard's position was ultimately correct or whether the issuance of citations was well-advised. Indeed, there can be no doubt that it is highly inadvisable for government agencies to enforce laws about which they themselves are confused, and perhaps even more inadvisable for them to rely on private parties to bear the costs of litigation necessary to bring clarity to the governing law. However, the only question before me is whether a reasonable person could countenance the Coast Guard's position in the particular context of this dispute.

■ I conclude that Judge Fitzpatrick did not abuse his discretion in deciding that the Coast Guard's position was substantial-

---

**6.** Judge Fitzpatrick further noted that "[e]nforcement actions at Philadelphia had followed a consistent interpretation of the statute and the instant cases were in line with that practice." *Id.* at 7.

**7.** Justice Scalia was specifically addressing the question of what standard of review a court of appeals should apply in reviewing a district court determination of fees, pursuant to 28 U.S.C. § 2412(d)(1)(A). However, his analysis also applies to the parallel situation, presented here, of district court review of an administrative determination, pursuant to 5 U.S.C. § 504(a)(1). Justice Scalia considered both situations in the course of his discussion. He noted that, in accordance with 5 U.S.C. § 504(c)(2), an agency decision may be reversed only if a reviewing court "finds that the failure to make an

award ... was unsupported by substantial evidence," and reasoned that a district court, subject to appellate review, should not be held to a higher standard. 487 U.S. at 559, 108 S.Ct. at 2547. In the present case, a "substantial evidence" standard is somewhat inapposite, since we are presented with no contested issues of fact, but "solely one of law." Decision on the Merits, *supra,* at 3. Justice Scalia's opinion generally suggests that "[i]n *all* ... separate-from-the-merits EAJA appeals," *id.* at 561, 108 S.Ct. at 2548 (emphasis added), where "the attorney's fee determination will involve a judgment ultimately based upon evaluation of the purely legal issue governing the litigation," *id.* at 560, 108 S.Ct. at 2547, the reviewing court should adopt an "abuse-of-discretion standard of review" *id.* at 561, 108 S.Ct. at 2548.

ly justified. The Coast Guard's position had, as *Pierce* requires, and as Judge Fitzpatrick observed, a reasonable basis in both law and fact: as a matter of law, Judge Fitzpatrick himself had recently issued two decisions compelling a finding of misconduct in the uncontested circumstances giving rise to this case; as a matter of fact, the circumstances were such that the law as pronounced by Judge Fitzpatrick could fittingly be applied. That there was no uniform nationwide policy also compelling the issuance of a citation does not undermine the reasonableness of the Coast Guard's position: the local officials issuing the citations were justified in enforcing what had become, at least in that Coast Guard region, a consistent interpretation of the governing law.[8] Whether or not the Coast Guard was clearly justified I need not say; it was at least "substantially justified" in accordance with the relatively lean gloss now associated with that term.

### Conclusion

For the foregoing reasons, I conclude that this court has jurisdiction to review the administrative judgment denying plaintiffs' application for recovery of costs and fees. I also conclude that Judge Fitzpatrick did not abuse his discretion in determining that plaintiffs were not entitled to recovery of costs and fees under the EAJA. Accordingly, I will deny plaintiffs' motion for summary judgment and grant the defendants' cross-motion for summary judgment.

---

**8.** Plaintiffs' only substantial rebuttal to the proposition that the law was clear and consistent at least within the immediate jurisdiction in which the docking occurred is that a senior Coast Guard official in Baltimore issued an interpretation of the governing statute at odds with that announced in several decisions by Judge Fitzpatrick. However, the Coast Guard official did not make his interpretation known until after the incident giving rise to this case occurred—in fact, such interpretation was not available until a late stage in the administrative proceedings on the merits. See Decision on Costs and Fees, *supra,* at 7–8. As Justice Scalia noted in *Pierce,*

---

the relevant question in determining whether an agency's position is "substantially justified" is "not what the law is now, but what the Government was substantially justified in believing it to have been." 487 U.S. at 561, 108 S.Ct. at 2548. Throughout the proceedings, the government was advancing an interpretation of the law, as applied in that region, that it had no reason to doubt until a late stage, indeed until after its position had already been elaborated. Accordingly, plaintiffs have failed meaningfully to rebut the reasonableness of the government's position as least in the limited context of the jurisdiction in which the citations were issued.