**Bobby W. POOLE, Staff Sergeant, United States Air Force, Plaintiff,**

**v.**

**Russell A. ROURKE, Secretary of the Air Force, etc., et al., Defendants.**

**Civ. No. S-87-1036 MLS.**

United States District Court, E.D. California.

Dec. 23, 1991.

Louis N. Hiken, San Francisco, Cal., for plaintiff.

Joseph E. Maloney, Asst. U.S. Atty., Sacramento, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

MILTON L. SCHWARTZ, District Judge.

This matter is before the court on (1) defendants' motion to transfer the case to the United States Claims Court because of this court's alleged lack of jurisdiction; (2) defendants' motion to amend the judgment filed February 21, 1991, to comply with alleged limits on this court's jurisdiction; and (3) plaintiff's motion for attorney fees. Both of defendants' motions relate to the court's subject matter jurisdiction under the Little Tucker Act, which places a $10,-000 cap on the jurisdiction of district courts in non-tort cases against the United States. 28 U.S.C. § 1346(a)(2) (1988).[1] Defendants contend that because the award sought in this case exceeds $10,000, the action should be transferred to Claims Court. Likewise, they argue that the February 21, 1991 judgment should be amended to avoid exceeding the $10,000 jurisdictional cap.

Plaintiff moves for attorney fees under the Equal Access to Justice Act ("EAJA"), codified at 28 U.S.C. § 2412, based on his success in obtaining summary judgment: (1) setting aside his honorable discharge; (2) ordering defendants to constructively reinstate him from the time he was improperly discharged through the date on which his term of service would have expired and to correct his military record to reflect the constructive reinstatement; (3) awarding him back pay and benefits to which he would have been entitled had he not been improperly discharged; (4) ordering defendants to grant plaintiff appropriate retirement benefits; and (5) awarding plaintiff his costs of suit. Under EAJA, a successful party in a suit against the United States[2] is entitled to attorney fees and

---

1. All citations to statutes in this decision refer to the most recent year of publication. No substantive provisions of the current statutes differ from provisions in force in 1986–87—the years in which plaintiff's rights were violated and suit was brought in this court.

2. Suits against "any agency or any official of the United States acting in his or her official capaci-

costs if the government's position is not substantially justified. 28 U.S.C. § 2412(d)(1)(A) (1988).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Bobby W. Poole, enlisted in the Air Force on October 13, 1972, after having served in the Army for three years. In a random urinalysis administered on March 20, 1986, plaintiff tested positive for a metabolite of THC, the psychoactive ingredient in marijuana. At that time, plaintiff had been enlisted in military service for approximately seventeen years and was a material facility supervisor who held the rank of technical sergeant at McClellan Air Force Base. Throughout his Air Force enlistment, plaintiff routinely received very strong airman performance reviews.

Plaintiff initially denied having used marijuana, but nonetheless accepted nonjudicial (Article 15) punishment for that offense. His punishment entailed a reduction in rank from technical sergeant to staff sergeant and a forfeiture of $700 in salary over a two-month period. Plaintiff appealed the punishment, but a superior commander denied the appeal on June 27, 1986. Subsequently, plaintiff admitted having used marijuana the night before the urinalysis was administered.

On July 18, 1986, the newly installed commander of plaintiff's squadron, Lt. Col. Jerry Price, notified plaintiff that he intended to recommend plaintiff's discharge from the Air Force pursuant to Air Force Regulation ("AFR") 39–10, para. 5–49(c).[3] A three-person discharge board ("Board") convened on October 22, 1986, to consider plaintiff's case. The Board received various types of documentary evidence and heard oral testimony. Although acknowledging that, as far as he knew, plaintiff had "done an excellent job at whatever he's been given," Lt. Col. Price recommended plaintiff's discharge "because of his position as an NCO and the fact that he did use illegal drugs and the Air Force policy and position is normally NCO's will not be retained if they use drugs.... Whether he can be rehabilitated is not an issue."[4] Lt. Col. Price indicated that his was a special duty unit with standards higher than those of a normal Air Force unit, that the unit was often stationed in areas where drugs were plentiful, and that plaintiff's duties involved handling potentially dangerous mechanized equipment. Lt. Col. Price concluded that "[plaintiff] does not deserve to be in the Air Force."

Plaintiff did not testify on his own behalf. However, he submitted an unsworn written statement for the Board's review in which he described the marijuana incident.[5]

ty" are deemed to be suits against the United States. 28 U.S.C. § 2412 (1988).

3. That regulation provides in pertinent part:
Airmen may be discharged for misconduct based on drug abuse that is [sic] the introduction on a military installation of, [sic] the illegal, wrongful, or improper use of, or the possession, sale, or transfer of, any narcotic substance, intoxicating inhaled substance, marijuana, or controlled substance, as established by 21 U.S.C. 812. Because drug abuse is not compatible with Air Force standards, it is essential that careful consideration always be given before keeping noncommissioned officers (NCOs) who are verified drug abusers in the Air Force. Normally, retention is not appropriate.
AFR 39–10, para. 5–49(c).

4. Lt. Col. Price also stated that plaintiff's ultimate admission to one use of marijuana did not affect his recommendation for discharge, but that "[a]s to what kind of message we send to other people, I think right now the Air Force is

very strong on the message they want to put out on illegal drug use and based on that I think if we kept him we would be sending a confusing signal to some people about the acceptability of drugs, especially in non-commissioned officers." This was consistent with Lt. Col. Price's written recommendation for discharge, in which he stated: "I do not recommend probation nor further rehabilitation effort. Current United States Air Force Quality Force factors clearly dictate separation of NCOs who are involved with illegal or wrongful use of drugs."

5. That statement asked the Board "to consider my excellent past record, my service record, and most importantly that I am not a drug abuser. I am a person who made a serious mistake, but I learned from it and I can go on from it to serve my country for many more years." Plaintiff described his marijuana use as follows:

I had been in Vietnam about four months before trying to smoke any marijuana. I thought I would try it and that maybe it

Plaintiff introduced some testimony, although most of the evidence on his behalf was found in the numerous affidavits he submitted. These affidavits, which comprise more than twenty-five in number, were written by plaintiff's supervisors and colleagues over the years. They portray a dedicated, motivated professional who got along well with people and had the ability to inspire his subordinates.[6] Of those affiants who addressed the subject, all strongly recommended that the Air Force offer plaintiff probation and rehabilitation.

None of the instructions to the Board are in the record. Perhaps most significant, it cannot be determined whether the Board received *any* instructions regarding probation and rehabilitation.

At the conclusion of the hearing, the Board met in closed session and, by majority vote, found that plaintiff had used marijuana on or about March 20, 1986. It then recommended that he be honorably discharged without probation or rehabilitation. The Board gave no reasons for the recommendation to refuse plaintiff probation and rehabilitation.[7]

On April 17, 1987, the discharge authority (the base commander) reviewed and approved the recommendations to discharge plaintiff and not to offer him probation and rehabilitation. On June 3, 1987, the Major Air Command Acting Director of General Law reviewed and approved the recommendations. On June 5, 1987, the Major Air Command Deputy Chief of Staff for Personnel reviewed and approved the recommendations. The Secretary of the Air Force subsequently reviewed and approved the recommendations and on June 29, 1987, directed the administrative discharge to be executed. On July 10, 1987, plaintiff applied to the Air Force Board for Correction of Military Records ("AFBCMR") for review of his pending discharge.[8]

---

would help me to relieve some pressure or to forget where I was, so far away from home and in the ugliest part of the world.... But those few times I tried it, it was no big deal and so I gave up on trying to get high with the crew.

....

[On March 19, 1986, at a party with several Vietnam veterans], [w]e all got talking about our tours there, and I just fell into old times. The marijuana was passed around all night, just like in Viet Nam. Again as I remember from Viet Nam, it was doing nothing for me....

The only excuse I have was I must have been so drunk that I was not thinking at all. I was with the old Vets who were influencing me.... It was dumb on my part, I can't believe I ever did it, but I did. I'm so sorry for this mistake.

Plaintiff also explained why he had not admitted to marijuana use initially, and stated "I can't explain why [I lied] except maybe a four letter word: FEAR. I thought maybe it could save my career. I also didn't realize how bad I would feel about a lie. The fact that I lied gnawed at me until I had to tell someone. I first told my counsel, then Chief Johnston, and then my commander, Lt. Col. Price." Plaintiff concluded by stating:

[T]his is my first mistake in 17 years. I pray you to consider my past history of an unblemished career. I have never received a letter of counselling or of reprimand. I have been dedicated to the military and given it my all.... I only want to continue to serve in the Air Force as proudly as I have in the past

17 years. I will do anything to make up for this stupid mistake I made a few months back. I can be counted on for any task as always to defend my country. All I ask you the members of the board is to please give me a second chance, to be retained and to be allowed to complete my Air Force career honorably.

6. Typical of the laudatory comments was that made by MSgt. Hippard, who testified that: "I observed him when he left the inspection section where I thought he did an outstanding job. That was a section that was marginal at best and he instilled pride and motivation to the work force and personnel. The troops worked behind him with a sense of pride and direction...."

7. The Board found that plaintiff did wrongfully use marijuana. He was therefore considered subject to discharge for drug abuse and was eligible for probation and rehabilitation. It then summarily recommended:

1. That SSgt Poole be discharged from the service for drug abuse with an honorable discharge.

2. That SSgt Poole not be offered probation and rehabilitation opportunities in accordance with AFR 39–10, Chapter 7, with a conditional suspension of his discharge.

8. The administrative record has no written entries from any of these reviews. However, in the written record developed by AFBCMR the above review process is described, although no records are attached. Furthermore, plaintiff's

On July 16, 1987, plaintiff brought the present action against the Secretary of the Air Force, *et al.*, seeking, *inter alia,* a temporary restraining order and preliminary and permanent injunctive relief prohibiting the Air Force from discharging him pending resolution of his administrative appeal and federal court review. On July 21, 1987, this court granted plaintiff a temporary restraining order which was subsequently extended until August 10, 1987, directing the Air Force to refrain from discharging plaintiff until after the court could hear arguments on his motion for preliminary injunction.

On August 7, 1987, the court denied plaintiff's motion for preliminary injunction. Relying upon *Hartikka v. United States,* 754 F.2d 1516, 1518 (9th Cir.1985), the court held that where a party seeks to enjoin implementation of a military personnel decision, that party must make a much stronger showing of irreparable injury than in the usual case seeking injunctive relief. Thus, the normal incidents and harms associated with discharge would not be sufficient injury under *Hartikka* to enjoin a military discharge. Some extraordinary injury must be demonstrated. Extraordinary injury had not been demonstrated in plaintiff's case because any stigma plaintiff might experience followed from his admitted, proscribed conduct and not from the discharge itself. The court held that plaintiff would suffer only the normal incidents of discharge, however severely they may affect him.

On August 11, 1987, plaintiff was discharged from the Air Force. Pending review by the AFBCMR, further proceedings in this court were stayed.

civilian counsel had directed extensive comments, arguments, and exhibits to both the discharge authority and to the McClellan Staff Judge Advocate maintaining that plaintiff should have been offered probation and rehabilitation. While plaintiff's counsel's letters are in the administrative record, we have no indication in the record that those letters were read or answered.

**9.** The AFBCMR stated that:

The applicant has provided no evidence for our review which was not seen by reviewing

On September 12, 1989, the AFBCMR denied plaintiff's application for correction of his military record. It found plaintiff's discharge proper because there was no indication that his urine sample was improperly processed or that the positive result was erroneous—indeed, plaintiff later admitted that he had used marijuana prior to the urinalysis. The AFBCMR also found that proper procedures were used to discharge plaintiff and to review that discharge in accordance with AFR 39–10, para. 5–49(c). The AFBCMR stated that "[w]e have seen no evidence which would cause us to conclude that reviewing authorities considered erroneous information or that the applicant's substantive rights were violated." Further, the AFBCMR was "unpersuaded" that the applicant was improperly denied probation and rehabilitation.[9]

After receiving the AFBCMR's decision, this court filed its Memorandum and Order on February 5, 1991, concluding that:

[D]efendants' decision to discharge plaintiff for misconduct based on drug abuse, pursuant to AFR 39–10, para. 5–49(c), was arbitrary and capricious, and an abuse of discretion, for the following separate and independent reasons:

(1) Paragraph 5–49(c) contains no controlling standards for determining the circumstances and factors to be weighed in ascertaining when an NCO should be offered probation and rehabilitation in lieu of discharge. Without such standards defendants' conduct was necessarily arbitrary.

(2) There is nothing in the administrative record that could possibly support an inference that defendants weighed and considered any evidence whatever, in arriving at their decision

authorities when it was determined that probation and rehabilitation should not be offered and lengthy service probation should be denied. In the absence of evidence to the contrary, we find the applicant was given every consideration required by the regulation and the guidelines set forth in then existing policy for probation and rehabilitation. There is nothing in the evidence before [sic] which would indicate that reviewing authorities abused their discretionary authority or that the aforementioned determinations were made based on improper considerations.

to discharge plaintiff rather than offer him probation and rehabilitation, other than the evidence as to whether he ingested marijuana on March 20, 1986.

(3) There is nothing in the administrative record that could possibly support an inference that defendants followed the law specified by the Department of Defense that "the potential for rehabilitation and further useful military service shall be considered by the Separation Authority.... If separation is warranted despite the potential for rehabilitation, consideration should be given to suspension of the separation, if authorized." 32 C.F.R. Part 41, App. A, Part 2, § A(2)(b). *See also* factors suggested in Section A of Part 2 that may be considered on the issue of retention or separation.

(4) The administrative record before the court offers no rationale whatsoever for the actions taken by defendants.

The court further concludes that remand to the administrative agency with directions to reinstate plaintiff and commence the administrative discharge proceedings over again is not a practical remedy nor does it seem likely to protect plaintiff from the substantial danger of further injustice. Accordingly, as indicated above, it has determined that plaintiff's motion for summary judgment should be granted.

This court rendered judgment on February 21, 1991: (1) denying defendants' and granting plaintiff's motion for summary judgment; (2) setting aside plaintiff's honorable discharge and ordering defendants to correct plaintiff's records to indicate that plaintiff constructively served on active duty from the date of his improper discharge (August 11, 1987) through the expiration date of his then current enlistment (November 7, 1989); (3) ordering defendants to pay plaintiff back pay for this period of constructive active duty and to reimburse him for expenses incurred because of the improper discharge; (4) ordering defendants to retire plaintiff with full

pay and benefits commensurate with his years of service, not to be reduced in any way for the misconduct based on drug use that was the subject of this action; (5) ordering defendants to pay plaintiff retroactive retirement pay; (6) ordering defendants to pay plaintiff's costs of suit; (7) offering plaintiff the opportunity to apply to the court for an award of attorney fees for the prosecution of this case; and (8) retaining jurisdiction over the case to take any necessary action to implement this suit.

Defendants subsequently filed the present motion to amend judgment, on March 7, 1991. On August 5, 1991, they filed the other present motion to transfer plaintiff's case to the United States Claims Court pursuant to 28 U.S.C. § 1631 (1988). Plaintiff applied for attorney fees and expenses on March 12, 1991. As indicated in the opening paragraph above, these three motions are the subject of this decision.

## II. JURISDICTION

### A. *Subject Matter Jurisdiction and the Tucker Acts*

Both plaintiff and defendants concede that the amount of the award in this case will greatly exceed the $10,000 threshold of the Little Tucker Act.[10] Accordingly, defendants contest the court's subject matter jurisdiction and move to transfer the case to the Claims Court pursuant to 28 U.S.C. § 1631.

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); *see also General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). A federal court is presumed to lack jurisdiction "unless the contrary affirmatively appears." *California*

---

**10.** Plaintiff states "both parties and this Court have all agreed that the government owes plaintiff more than $44,500.00." Defendants cite the figure as "nearly $50,000."

*ex rel. Younger v. Andrus,* 608 F.2d 1247, 1249 (9th Cir.1979).

▆ In light of these limits, the first question the court must address in all litigation is whether subject matter jurisdiction exists. The burden of proving federal district court jurisdiction is upon the party asserting jurisdiction, which typically, and in this action, is plaintiff. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). If jurisdiction is lacking, the case may be transferred to another court to cure the want of jurisdiction:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (1988).

▆ Where the defendant is the United States, the existence of jurisdiction depends upon its waiver, if any, of sovereign immunity: "It long has been established that the United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). A congressional waiver of sovereign immunity "cannot be implied, but must be unequivocally expressed" in statute. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), *aff'd,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). The two primary waivers of federal sovereign immunity are the Tucker Act, which governs non-tort monetary claims, and the Administrative Procedure Act ("APA"), which governs non-monetary relief. *See Bedoni v. Navaho–Hopi Indian Relocation Comm'n,* 854 F.2d 321, 325 (9th Cir.1988), *superseded on other grounds,* 878 F.2d 1119 (9th Cir. 1989).

The Tucker Act vests jurisdiction over non-tort claims in the United States Claims Court. It provides:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service ... shall be considered an express or implied contract with the United States.

28 U.S.C. § 1491(a)(1) (1988). The Little Tucker Act gives concurrent jurisdiction over Tucker Act claims to federal district courts, provided that the claim does not exceed $10,000. It provides:

> The district courts shall have original jurisdiction, concurrent with the [Claims Court], of: ... Any other civil action or claim against the United States, *not exceeding $10,000 in amount,* founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.... For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service ... shall be considered an express or implied contract with the United States.

28 U.S.C. § 1346(a)(2) (1988) (emphasis added).

▆ Thus, where monetary relief of $10,-000 or less is sought from the government, federal district courts and the Claims Court have concurrent jurisdiction. 28 U.S.C. §§ 1346(a)(2) and 1491 (1988). Where mon-

etary relief will exceed $10,000, however, jurisdiction lies *exclusively* in the Claims Court under 28 U.S.C. § 1491. Of course, a plaintiff may waive recovery in excess of $10,000 and thereby assure jurisdiction in the district court. *See Levy v. Urbach*, 651 F.2d 1278, 1280 (9th Cir.1981); *United States v. Johnson*, 153 F.2d 846, 848 (9th Cir.1946); *Campbell v. United States Air Force*, 755 F.Supp. 893, 899 (E.D.Cal.1990). It is important to note that "[i]t is not the nature of the cause of action which determines whether jurisdiction is vested in the district court or the Claims Court but rather the nature of the relief requested." *Matthews v. United States*, 810 F.2d 109, 111 (6th Cir.1987).

## B. *Monetary Relief Under the Tucker Act*

Although the language in the Little Tucker Act may appear to forbid district courts from awarding $10,000 or more in any non-tort case against the United States, subsequent cases have interpreted the language as not applying to *all* monetary claims. These cases turn on the question of whether the remedy sought is properly classified as money damages or instead as equitable monetary relief. This question is important because the Little Tucker Act has been construed to limit district court jurisdiction only where more than $10,000 in money damages is at issue; the Act does not even apply to a claim that seeks monetary relief of a purely equitable nature. *Rowe v. United States*, 633 F.2d 799, 802 (9th Cir.1980) ("The Tucker Act, by its terms, applies only to claims for money damages. Therefore, it does not preclude review of agency action when the relief sought is other than money damages."), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981); *Vietnam Veterans v. Secretary of the Navy*, 843 F.2d 528, 534 (D.C.Cir.1988) ("[T]o be based on the Little Tucker Act a claim must be, at least in some sense, for money. It is equally clear that a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff.").

In *Bowen v. Massachusetts*, the Supreme Court acknowledged the distinction between the two forms of relief:

Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay, or for "the recovery of specific property or *monies,* ejectment from land, or injunction either directing or restraining the defendant officer's actions."

487 U.S. 879, 893, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988) (emphasis in original) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949)). The Court in *Bowen* stated that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* In *School Comm. v. Department of Educ.*, the Supreme Court recognized that relief ordering reimbursement of educational costs is not "damages," even though money changes hands. 471 U.S. 359, 371–72, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985). The Court concluded that the order for reimbursement merely required the appellant to "belatedly pay expenses that it should have paid all along and would have borne in the first instance." *Id.;* 105 S.Ct. at 2003.

The *Bowen* Court quoted extensively from Judge Bork's opinion in *Maryland Dep't of Human Resources v. Department of Health & Human Servs.*, wherein Maryland asked the district court for declaratory and injunctive relief against reducing funds otherwise due. 763 F.2d 1441, 1446 (D.C.Cir.1985). The court held that the relief sought was not money damages, even though the claim would require the federal government to pay money:

Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the

plaintiff the very thing to which he was entitled." Thus, while in many instances an award of money is an award of damages, "[o]ccasionally a money award is also a specie remedy."

*Maryland Dep't of Human Resources, supra,* 763 F.2d at 1446 (emphasis in original) (citations omitted) (quoted in *Bowen, supra,* 108 S.Ct. at 2732).

Likewise, several Claims Court decisions have agreed that district courts have jurisdiction to provide equitable relief that does not constitute an award of damages even though it is monetary in nature. *See, e.g., Froudi v. United States,* 22 Cl.Ct. 290, 295–96 (1991) (mere fact that claim is valued at $40,000 does not change nature of the relief sought from equitable to a money judgment); *Commonwealth of Kentucky ex rel. Cabinet for Human Resources v. United States,* 16 Cl.Ct. 755, 760 (1989) (explicitly adopting language of *Bowen* ).

Applying the analyses of the above authorities to this case, the court concludes that plaintiff's claims are not for money damages. In his original complaint, plaintiff sought only mandamus, prohibition and a preliminary and permanent injunction, together with "such other relief as the court deems just and proper," in order to effect rescission of the order discharging him from service and to permit him to complete his current enlistment.[11] Plaintiff has never requested money; he merely wanted his job back. His assertion that "the injunctive and declaratory relief sought by and awarded to the plaintiff have value far above and beyond the derivative pecuniary award entailed therefrom" is compelling. As other courts have noted:

> It would be demeaning to justice and to respect for the non-monetary concerns of former officers, for this court to hold that plaintiff's claims for invalidity of his conviction and discharge are necessarily masks for a subsequent claim of monetary relief. At least as important as

back pay are a man's career, his livelihood, his rights as a veteran, his status as a convicted criminal, and his reputation.

*See, e.g., Melvin v. Laird,* 365 F.Supp. 511, 520 (E.D.N.Y.1973).

 It is important to note also that the Claims Court has power to award only money damages, and not equitable relief such as injunctions, declaratory judgments, or specific performance. *Bowen, supra,* 108 S.Ct. at 2737–38. Although the Claims Court may "employ equitable doctrines," it may not hear a claim that requests only equitable relief. *Rowe, supra,* 633 F.2d at 802. Thus, plaintiff's case could not have originally been brought in Claims Court because plaintiff sought only equitable relief.

As the Supreme Court has acknowledged, a suit for reinstatement with back pay is an equitable action for specific relief and not an action at law for damages. *See Bowen, supra,* 487 U.S. at 893, 108 S.Ct. at 2732. Back wages and retirement pay resulting from constructive reinstatement constitute a form of reimbursement because they require defendants to "belatedly pay expenses that it should have paid all along and would have borne in the first instance" had plaintiff not been improperly discharged. *School Comm., supra,* 471 U.S. at 371–72, 105 S.Ct. at 2003. Though an award of money *per se,* back pay does not substitute for plaintiff's losses in any way; rather, it is "the very thing to which he was entitled." *Maryland Dep't of Human Resources, supra,* 763 F.2d at 1446.

 It is nonetheless true that the jurisdiction of the Claims Court may not be evaded by a complaint that appears to seek only equitable relief "where the real effort of the complaining party is to obtain money from the federal government." *Bakersfield City Sch. Dist. v. Boyer,* 610 F.2d 621, 628 (9th Cir.1979). However, it is no

---

**11.** It should be noted that plaintiff predicated jurisdiction on the United States Constitution alleging violations of his Fifth and Eighth Amendment rights by the United States (namely, by Secretary of the Air Force Russell A. Rourke). The subject matter jurisdiction of this court clearly exists in the general federal question jurisdiction statute, 28 U.S.C. § 1331 (1988).

That section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1988). Thus, were it not for the interposition of the jurisdictional cap in the Little Tucker Act, there could be no question as to the court's subject matter jurisdiction over this case.

less true that where plaintiff genuinely seeks equitable relief, even where the equitable relief may lead to an award of money, jurisdiction exists in federal district court. *See Beller v. Middendorf,* 632 F.2d 788, 799 (9th Cir.1980) ("[A] district court does not lose jurisdiction over a claim for non-monetary relief simply because it may later be the basis for a money judgment."), *cert. denied,* 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981); *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1979) (same); *Vietnam Veterans v. Secretary of the Navy,* 843 F.2d 528, 534 (D.C.Cir.1988) ("a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff").

 In determining plaintiff's true goals, courts may not blindly accept the parties' categorization of the relief but must look to the essence of the suit. *Beller, supra,* 632 F.2d at 799 (recognizing possibility that district court could have jurisdiction over back pay claim in excess of $10,000 where relief sought is "essentially" or "primarily" non-monetary); *Denton v. Schlesinger,* 605 F.2d 484, 486 (9th Cir.1979) ("Looking behind labels and generalizations of their complaint," plaintiffs "essentially" requested money damages and thus the Claims Court has exclusive jurisdiction); *Mathis v. Laird,* 483 F.2d 943, 943–44 (9th Cir.1973) (where "case is essentially one for a money judgment," Claims Court has exclusive jurisdiction); *Giordano v. Roudebush,* 617 F.2d 511, 515 (8th Cir.1980) (where back pay claim worth only $6,000 when filed and "monetary re-

lief was clearly not his principal motive," district court had jurisdiction over equitable claims and plaintiff not required to waive all damages over $10,000).

In this case, it is clear that plaintiff genuinely and essentially has prayed for purely equitable relief from the very beginning. It is solely and directly the result of defendants' improper refusal to timely give him that relief that the nature of the equitable relief has changed from non-monetary injunctive relief to constructive reinstatement with back pay. But because the nature of plaintiff's suit has not changed from one for equitable relief to one for money damages, the Little Tucker Act does not preclude this court's jurisdiction to award plaintiff the relief to which he is entitled.

## III. DEFENDANTS' MOTION TO AMEND JUDGMENT

Defendants also move the court pursuant to Fed.R.Civ.P. 59(e) to amend the judgment entered February 21, 1991,[12] to conform to the Tucker Act limit on the amount of money damages this court may award. In light of the court's decision that the monetary award is not one for money damages, notwithstanding that it exceeds $10,000, no amendment is required and the motion must therefore be denied.

## IV. PLAINTIFF'S MOTION FOR ATTORNEY FEES

### A. *Attorney Fees Under the Tucker Act*

 The Little Tucker Act does not specify whether the $10,000 cap on federal

---

12. In its judgment, the court ordered:

3. Defendants shall award plaintiff back pay for this period of constructive active duty, reimbursement of any quarters, housing and subsistence allowances and accumulated annual leave to which he would have been entitled during this period, and reimbursement of any medical and dental expenses plaintiff incurred that would have been covered by the Air Force during the period of constructive active duty. Defendants shall be entitled to offset against this award any civilian earnings plaintiff received during the period of constructive active duty.

4. ... Defendants shall retire plaintiff as of November 8, 1989, with full retirement pay and benefits commensurate with his years of

service, including his constructive active duty service. Plaintiff's retirement pay and benefits shall not be reduced or affected in any way by the alleged misconduct based on drug abuse which was the subject of the administrative discharge proceedings found unlawful by the court.

5. Defendants shall award plaintiff retroactive retirement pay due from November 8, 1989, until the date plaintiff's prospective retirement pay and benefits begin....

6. Defendants shall pay plaintiff all costs of suit.

7. Plaintiff's attorney may apply to the court for an award of attorney's fees for the prosecution of this case.

**1558**

district court jurisdiction includes amounts sought as attorney fees and costs, nor has the Supreme Court or the Ninth Circuit ruled on the question. A number of other courts have held that attorney fees, when provided for by statute, must be included in calculating the amount of a claim for purposes of determining a district court's jurisdiction. *Oliveira v. United States,* 827 F.2d 735, 741–42 (Fed.Cir.1987) (Claims Court did not err in holding plaintiff not entitled to recover fees incurred either in district court or in Eleventh Circuit: such award would be unreasonable in view of lack of jurisdiction in these forums and in view of EAJA's specific requirement, as basis for award of fees, that action be brought before "court having jurisdiction"); *Graham v. Henegar,* 640 F.2d 732, 735–36 (5th Cir.1981) ("attorney fees, when provided for by statute, must be included in determining the amount of a Tucker Act claim"); *Polos v. United States,* 556 F.2d 903, 906 (8th Cir.1977) (plaintiff not entitled to fees in district court where Claims Court had exclusive jurisdiction over suit); *Zumerling v. Marsh,* 591 F.Supp. 537, 543 (W.D.Pa.1984) (statutory attorney fees included in determining whether amount claimed exceeds $10,000 under Tucker Act), *aff'd,* 769 F.2d 745 (Fed.Cir.1985); *Lichtenfels v. Orr,* 604 F.Supp. 271, 273–74 (S.D.Ohio 1984) (plaintiff waived attorney fees so that $10,000 would not be exceeded), *aff'd,* 878 F.2d 1444 (Fed.Cir.1989); *June v. Secretary of the Navy,* 557 F.Supp. 144, 147 (M.D.Pa.1982) (plaintiff waived attorney fees in order to avoid exclusive jurisdiction of Claims Court).

Each of the above cases is distinguishable from the case at bar. *Oliveira* arose under the Federal Court Improvement Act of 1982 and not under the Tucker Act. Thus, it does not address the issue before this court, namely, the relationship between EAJA attorney fees and the $10,000 jurisdictional cap of the Little Tucker Act.

Second, *Graham* and *Zumerling* both address the jurisdiction question in the particular context of a statutory provision that gives rise both to a substantive right and to an award of attorney fees. The Tucker Act "is itself only a jurisdictional statute;

it does not create any substantive right enforceable against the United States for money damages.... Rather, the Tucker Act 'merely confers jurisdiction ... whenever the substantive right exists.'" *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). *Graham* itself notes that

> the scope of a Tucker Act claim must be determined by looking to the source of the substantive right upon which the claim is based. *Only when the source of the substantive right for which the Tucker Act supplies jurisdiction provides for attorney's fees over and above the amount of damages should attorney's fees be added to the amount of damages claimed in calculating the amount in controversy.* In this case, the source of the firefighters' cause of action, 28 U.S.C. § 216(b), specifically provides for an award of attorney's fees to a prevailing plaintiff in addition to recovery of unpaid overtime compensation and liquidated damages.

*Graham, supra,* 640 F.2d at 735–36 (emphasis added); *see also Castillo v. United States,* 707 F.2d 422, 424 (9th Cir.1983) ("The Tucker Act does not create a substantive right enforceable against the United States for money damages; it merely confers jurisdiction whenever the substantive right exists. The Tucker Act must be strictly construed in light of its function in giving the consent of the government to be sued.") (citations omitted).

In the instant case, the statute that supplies the substantive right is separate from the statute that authorizes the award of attorney fees. Plaintiff claims attorney fees under EAJA, 28 U.S.C. § 2412(d)(1)(A). EAJA provides for an award of attorney fees to a prevailing plaintiff or defendant in a suit in which the United States is the adverse party and where the United States cannot show that its position is "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1988). EAJA does not, however, provide a substantive right upon which a claim against the United States may be based. The substantive right sued

upon in this case is an alleged violation of Department of Defense directives and Air Force Regulations, and also the Fifth Amendment to the United States Constitution (procedural due process).[13]

The other cases mentioned above are also distinguishable from this case. In *Polos*, the court did not explicitly hold that attorney fees should be included in calculating the jurisdictional amount. Rather, it decided that plaintiff's claim for back pay in excess of $10,000 was essentially a suit for damages and therefore transferred it to the Claims Court. *Polos* then denied attorney fees in a footnote: "In light of our disposition of the principal appeal, we conclude that the District Court did not err in denying the request for attorneys fees." *Polos, supra*, 556 F.2d at 906 n. 7. *Polos* thus does not provide solid support for a holding that attorney fees should be included in calculating the jurisdictional amount.

The only other reported cases relating attorney fees to the jurisdictional amount of the Little Tucker Act are *June* and *Lichtenfels*. Neither case explicitly holds that fees should be included in the calculation. Plaintiffs in both cases waived claims in excess of $10,000, including amounts claimed as attorney fees. Had plaintiffs not done so, the *June* and *Lichtenfels* courts would have had to decide whether to include the fees in the jurisdictional calculation. Because of the waivers, neither court reached the question.

Not only have other courts failed to hold that attorney fees should be included in calculating the jurisdictional amount of the Little Tucker Act, but also the language in several Supreme Court cases discussed, *supra*, suggests just the opposite result: that attorney fees should not be included in the Tucker Act calculation. Those cases turned on the question of whether the remedy sought was properly classified as money damages—and thus subject to the Little Tucker Act jurisdictional cap—or instead as equitable monetary relief—which is not subject to the $10,000 limit. *See* discussion, *supra*.

Indeed, one court, guided by the *Bowen* Court's analysis, explicitly held that awards of attorney fees and costs are not damages awards:

> Unlike a damage award, an award of costs and fees in no way rectifies the grievance initially giving rise to a case; it does not, in Judge Bork's words, "substitute for a suffered loss." Rather than being compensation, costs and fees arise solely as incidents of the effort to achieve compensation. The underlying idea is to regain specific monies expended rather than to find a surrogate for what has unfortunately been denied. In that sense, an award of costs and fees, though monetary, and though utilizing the same currency as a damage award, is more akin to specific relief than to damages traditionally understood.

*Bruch v. United States Coast Guard*, 749 F.Supp. 688, 692 (E.D.Pa.1990). Having found that attorney fees are not money damages, *Bruch* then concluded that the monetary cap of the Little Tucker Act did not apply.

---

**13.** Although plaintiff did not cite any statutes which provide the source of the substantive right sued upon in this case, the following statutes provide ample support for plaintiff's position that his rights were violated when he was wrongfully ordered to be discharged from the Air Force. The Administrative Procedure Act ("APA") provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States.... 5 U.S.C. § 702 (1988). Two other statutes also provide solid support for plaintiff's claim that his rights were violated, namely, 10 U.S.C. § 1169 (1988) (which applies to all branches of the Armed Forces) and 10 U.S.C. § 8811(b) (1988) (which applies specifically to the Air Force). Both statutes provide that "[n]o regular service member of an armed force may be discharged before his term of service expires, except—(1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court martial; or (3) as otherwise provided by law."

Applying the analyses of *Bruch* and the cases discussed *supra*, plaintiff's claim for attorney fees is not one for money damages. An award of costs and fees under EAJA does not substitute for a suffered loss. Although the award involves money, it is more akin to specific relief than to money damages. EAJA fees and costs are not compensatory, but arise "solely as incidents of the effort to achieve compensation." *Bruch*, 749 F.Supp. at 692. The fees are not a substitute remedy for what has been denied but rather are a refund of what was expended. Because no money damages are involved, there is therefore no $10,000 limit on plaintiff's attorney fees award.

### B. Requirements for an Award of Attorney Fees Under the Equal Access to Justice Act

The Equal Access to Justice Act ("EAJA")[14] provides, in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1988). The congressional purpose in enacting EAJA was to eliminate the average person's financial disincentive to seek review of or defend against unreasonable governmental actions. The Senate stated:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

S.Rep. No. 253, 96th Cong., 1st Sess. 5 (1979). Congress intended EAJA to rectify this situation by providing for an award of reasonable attorney fees to a prevailing party in an action against the United States, unless the government's position was substantially justified or special circumstances would make such an award unjust. *See id.*

In order to justify an award of fees under EAJA, several requirements must be satisfied. First, the fee application must be filed within thirty days of final judgment in the action and must be supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(B) (1988). Second, the claimant must satisfy a net worth requirement. 28 U.S.C. § 2412(d)(2)(B) (1988). Third, the claimant must be a "prevailing party." 28 U.S.C. § 2412(d)(1)(A) (1988). If these three requirements are met, plaintiff is entitled to an award of attorney fees unless the government has raised the "substantial justification" or "special circumstances" exceptions. If defendant raises either exception, the court must engage in a second level of inquiry to determine whether an EAJA award is appropriate.

In the present case, the government has raised the substantial justification exception. Because defendants do not dispute that plaintiff satisfies the net worth requirement and do not assert the special circumstances exception, the court will not discuss these requirements.

### 1. Final Judgment

Defendants dispute that final judgment was rendered and that plaintiff's application for fees was made during the thirty-day period. Under EAJA a party seeking attorney fees must submit an application to the court "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B) (1988). In 1985 Congress added a provision defining a "final judgment" as one "that is final and not appeal-

---

**14.** Congress originally enacted EAJA in 1980 to be implemented on October 1, 1981. Pub.L. No. 96–481, 94 Stat. 2325 (1980). After a three-year period, EAJA expired pursuant to its sunset provision. Congress then passed amendments on July 24, 1985, to restore and permanently enact EAJA. Pub.L. No. 99–80, 99 Stat. 183 (1985) (replacing Pub.L. No. 96–481, 94 Stat. 2325 (1980)).

able." *See* 28 U.S.C. § 2412(d)(2)(G) (1988). Applications for fees under EAJA can thus be "filed and considered any time after final judgment is entered by the district court, but no later than 30 days following the entry of a final, non-appealable judgment from the appellate court." *Cervantez v. Sullivan,* 739 F.Supp. 517, 521 (E.D.Cal.1990).

Despite the use of the "final judgment" language, the Ninth Circuit has held that interim fees are available under EAJA where a party has prevailed on some substantial part of its claim, notwithstanding the need for further proceedings. *See, e.g., Animal Lovers Volunteer Ass'n, Inc. v. Carlucci,* 867 F.2d 1224, 1225 (9th Cir.1989) (fact that dispute between parties may continue does not preclude fee award); *National Wildlife Fed'n v. F.E.R.C.,* 870 F.2d 542, 545–46 (9th Cir.1989) (where organization prevailed on one of five claims and where court's decision on that claim provided substantive and not procedural relief, case had proceeded to final judgment). The thirty-day period is "intended to operate as a statute of limitations rather than as a jurisdictional bar to consideration of EAJA fee applications." *Cervantez, supra,* 739 F.Supp. at 521.

In the instant case, the court entered judgment on February 21, 1991. In that judgment, discussed *supra,* the court, *inter alia:* (1) awarded plaintiff summary judgment; (2) set aside plaintiff's honorable discharge and ordered defendants to correct plaintiff's records to show constructive reinstatement; (3) ordered defendants to award plaintiff back pay and reimburse his expenses resulting from the improper discharge; (4) ordered defendants to retire plaintiff with back pay and benefits; (5) ordered defendants to pay plaintiff retroactive retirement pay; and (6) ordered defendants to pay plaintiff's costs of suit. Thus, plaintiff has clearly prevailed on a substantial part of his claim.

 Defendants' contentions that no final judgment for EAJA purposes exists because of the pending motions to transfer the case and to amend the judgment are unpersuasive. A final judgment has been entered, and the plaintiff is not required to wait until all post judgment appeals have been exhausted to collect his fee. As the court in *Carlucci* held, the government was mistaken in its belief that fees may not be awarded until "the appellants win a judgment which 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Carlucci, supra,* 867 F.2d at 1225. Otherwise, the government could delay an award of fees for so long as to erect a financial barrier for some parties to sustain the litigation—thus, thwarting one of the major purposes behind EAJA's enactment. Therefore, despite the pending motions to transfer the case and to amend the judgment, this case has clearly proceeded to final judgment, and an award of interim EAJA fees is appropriate.

Plaintiff originally applied by mail for attorney fees under EAJA on March 13, 1991—fourteen court days *after* the court's entry of judgment. He re-applied on March 18, 1991, by submitting a notice of motion for attorney fees. In the motion now before the court, plaintiff seeks to renew his application. Plaintiff's application for fees is therefore ripe and timely.

2. *Prevailing Party*

Once the court finds that the final judgment and net worth requirements are met, it must determine whether the fee applicant is a "prevailing party." To do so, the court must evaluate the degree of success obtained. *I.N.S. v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990). Although EAJA does not define the term "prevailing party," substantial case law addresses the definition: "A typical formulation is that plaintiffs may be considered 'prevailing parties' for attorney fee purposes if they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also Lear Siegler, Inc. v. Lehman,* 893 F.2d 205, 208 (9th Cir.1989) (plaintiff not prevailing party where it did not demonstrate it received relief in its

underlying claim); *Austin v. Department of Commerce*, 742 F.2d 1417, 1420 (Fed.Cir. 1984) (it is "clear that a party need not have litigated to final judgment and have been awarded the ultimate relief requested in order to be entitled to an award of fees under EAJA"). Recently, the Supreme Court reaffirmed the *Hensley* standard in *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

In the instant case, defendants claim that plaintiff is not a prevailing party because there was no final judgment rendered in this case upon which plaintiff could prevail. The court holds to the contrary; final appealable judgment has been rendered. *See* discussion, *supra*.[15] Based on the order granting summary judgment, plaintiff has clearly prevailed on all "significant issue[s]" in the litigation and is a "prevailing party" for EAJA purposes.

### 3. *Substantial Justification*

Where a court determines that the above requirements have been met, a second level of inquiry may be necessary if the government has asserted an exception for substantial justification or for special circumstances that render an award unjust. In this case, the government has asserted that its position was substantially justified.

■ Under EAJA there is a rebuttable presumption that a prevailing party in litigation against the government is entitled to fees. The government can rebut the presumption by demonstrating that its position was substantially justified. *United States v. 313.34 Acres of Land*, 897 F.2d 1473, 1477 (9th Cir.1989); *Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir.1988). The government bears the burden of proving substantial justification. *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1987); *Petition of Hill*, 775 F.2d 1037, 1042 (9th Cir.1985). The court shall determine the issue based upon "the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B) (1988).

The Supreme Court has construed "substantially justified" to mean:

"[J]ustified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*See National Wildlife, supra*, 870 F.2d at 546 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). Thus, the standard for "substantial justification" announced in *Pierce* asks whether there was a reasonable justification in fact and law for the government's position. *See Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir.1988) (agency's underlying conduct was unreasonable where it utilized an unpublished policy to effectively deny SSI benefits to persons holding commercial fishing licenses valued over $6000); *National Wildlife, supra*, 870 F.2d at 546 (F.E.R.C.'s position was not substantially justified because its failure to consider the Fish and Wildlife Program in issuing permits, as required by the Northwest Act, was unreasonable).

■ In determining whether the government's position was substantially justified, the court must examine the underlying governmental action and the position taken by the government in the litigation. *See Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir.1988) (in determining existence of substantial justification, court must ask: (1) whether government was substantially justified in original action and (2) whether government was substantially justified in defending validity of that action in court);

---

**15.** The court granted plaintiff's motion for summary judgment. Subsequently, the court entered final judgment for plaintiff, including an order directing defendants to correct plaintiff's military records to reflect an *unconditional* honorable discharge, back pay and reimbursement for expenses incurred as a result of the improper discharge, an order directing defendants to retire plaintiff with full pay and benefits, an award of retroactive retirement pay, and costs of suit.

*League of Women Voters v. F.C.C.,* 798 F.2d 1255, 1258 (9th Cir.1986) (in analyzing reasonableness of government's position under "totality of the circumstances" test, court must look both to position asserted by government in trial court as well as nature of underlying government action at issue); *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984) (substantial justification determination evaluated under the totality of the circumstances, prelitigation and during trial).

■■■ Mere failure of the government to prevail in the suit does not raise a presumption that its position was not substantially justified. *Hill, supra,* 775 F.2d at 1042; *see also Kali, supra,* 854 F.2d at 332 (lack of substantial justification not established by fact that another court had already entered decision adverse to government's position on issue in question). *Kali* rejected the argument that because of the deference typically given to an agency's interpretation of its statutes or regulations, a court's finding that the agency has acted contrary to law implicitly indicates that the agency's action was unreasonable. 854 F.2d at 333. "[T]his circuit has recognized that 'arbitrary and capricious conduct is not per se unreasonable.'" *Id.* (quoting *Andrew v. Bowen,* 837 F.2d 875, 878 (9th Cir.1988)). However, "attorney fees may ... be awarded when the agency reasonably believed that its action [was] not arbitrary and capricious." *Andrew, supra,* 837 F.2d at 878.

Courts have varied widely in determining what constitutes substantial justification in individual lawsuits. Some generalizations can be made based on the varying factual situations of these cases. Whether alone or in combination, certain factors have led to findings that the government's position was not substantially justified. These factors are: (1) clarity of the law at issue or the legislative intent; (2) lack of any evidence to support the federal position; (3) failure of the government's own regulations or prior practices to support its position; (4) prior rejection of the government's position by other courts in similar cases; (5) length or extent of proceedings; (6) complete ignorance of uncontradicted evidence or opinions of the government's own experts; and (7) rejection of decisions of administrative law judges by the government. 1 Derfner & Wolf, *Court Awarded Attorney Fees* § 10.03 (1991).

On the other hand, absence of these factors or presence of others has tended to support findings that the government's position was substantially justified. *Id.* Factors that have supported a substantial justification finding are: (1) ability of the United States to make out a *prima facie* case; (2) lack of clarity in the substantive law; (3) interpretation by the government of a law or regulation that is reasonable, albeit ultimately determined to be incorrect; (4) complexity of the law or issues involved; (5) closeness of factual or legal questions; (6) existence of arguably supportive precedent; (7) absence of precedent in support of fee petitioner's position; and (8) speed with which the government acts in complying with valid demands. *Id.*

■■■ In the instant case, defendants contend that they were substantially justified both in their original decision to discharge plaintiff and in their subsequent decision to defend the discharge in court. Defendants' first argument is that their partial success in court demonstrated their substantial justification in discharging plaintiff and in defending the discharge. Defendants claim success based on this court's prior statement that, according to controlling Department of Defense regulations, the Air Force was not required to offer plaintiff the opportunity for probation and rehabilitation before discharge.

Defendants' claims of victory are belied by the subsequent text of the Memorandum and Order which states that "although the Air Force was not required to offer plaintiff rehabilitation and probation, it was required to give serious consideration to offering him probation and rehabilitation rather than discharge." Mem. and Order at 29 (Feb. 5, 1991). Thus, not only does defendants' argument not persuade, it supports a finding that the government's position was not justified: the administrative record does not reflect that the Air Force

ever considered the possible justification of offering plaintiff probation and rehabilitation.

■ As a corollary to their first argument, defendants challenge the power of the court to find that they failed to comply with the Department of Defense regulation requiring that the reviewing authority consider a member's potential for rehabilitation. *See* 32 C.F.R. Pt. 41, App. A, Pt. 2, § A (1991). Defendants contend that because the court and not the parties raised this regulation *sua sponte*, the Air Force's noncompliance with the regulation cannot be part of the substantial justification analysis.

This argument hardly merits mention. Not only is the Air Force responsible for knowledge of and adherence to controlling Department of Defense regulations, but, as defendants well know, this court is obligated to consider all relevant law in making its decision. Here, 32 C.F.R. Pt. 41 was pertinent to judicial resolution of plaintiff's action.

■ Defendants' second argument is that the standards the Board used to determine whether to retain or discharge plaintiff were not unacceptably vague and that defendants were substantially justified in relying on them. Defendants correctly assert that the Air Force could develop adjudicatory standards either through rule making, or through "case-by-case decisionmaking." If the Air Force decides to use the case-by-case method, however, it is nonetheless required to include its reasoning on the record to show that its decision was not arbitrary and capricious. Because the Air Force recorded no evidence of any consideration of retaining plaintiff with probation or rehabilitation, this court cannot discern the reasoning used by the reviewing authorities in their decisions to discharge plaintiff. Thus the court cannot deem the government's position to be substantially justified.

■ Defendants also contend that the government's position has never been that evidence of drug use alone was sufficient to require plaintiff's discharge or that all

NCO drug users must be discharged. Defendants assert that plaintiff's record as well as his offense were "considered at all levels." Defendants also state that plaintiff received a lengthy probation review solely to consider probation and rehabilitation, but that the strength of plaintiff's record was outweighed by concerns favoring discharge in the context of NCOs. Defendants rely on a presumption that public officials act in good faith as evidence both of the reasonableness of the discharge decision and of the truth of Air Force officials' statements that they considered plaintiff's record and did not automatically discharge him. Defendants reiterate the court's language recognizing that decisions of military agencies are treated with particular deference because of the military's special position in society and its unique competence to make military decisions. *See* Mem. and Order at 18 (Feb. 5, 1991). They assert that any explanation of the AFBCMR's decision would "inevitably involve its discretionary assessment of factors for which this Court has no authority to substitute its wisdom." *See Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

■ The accuracy of defendants' contentions cannot be deduced from the administrative record. That record, as stated above, fails to reflect that *any* consideration was given to plaintiff's record or that *any* real standards were used by the reviewing authority. Because the administrative record is grossly inadequate, this court cannot find that defendants' position was substantially justified. No single fact has been presented to support justification. Moreover, this court will not permit the Air Force to merely invoke the presumption that officials act in good faith, or to invoke the special deference given to the military, and thereby obtain unfettered discretion to do whatever it pleases. First, the presumption of good faith is overcome when officials summarily discharge, without any evidence whatever that they considered offering probation or rehabilitation, a man who has served in the military for seventeen years without incident and who, on one occasion, tests positive for marijuana

use. Second, contrary to defendants' contentions, military discharge decisions are subject to judicial review and are reviewed by the same standards as other administrative decisions. *See* Administrative Procedure Act, 5 U.S.C. §§ 701(b)(1)(F) & (G) (1988). "[A]dministrative decisions are subject to review, and can be judicially held invalid, on the ground that the Secretary has failed to follow his own valid regulations." *Denton v. Secretary of the Air Force*, 483 F.2d 21, 25 (9th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).

None of the other factors proffered to support a finding of substantial justification exists in this case. On the contrary, several factors demonstrate the *lack* of substantial justification: (1) the Air Force's decision to summarily discharge plaintiff without seriously considering probation or rehabilitation was contrary to the Air Force's own regulations; (2) the Air Force's decision clearly conflicted with Department of Defense policy favoring probation and rehabilitation over automatic discharge; and (3) the proceedings in this case have been lengthy.[16]

The pertinent regulation requires that *"careful consideration always be given"* before keeping noncommissioned officers (NCOs) who are verified drug abusers in the Air Force." AFR 39–10, para. 5–49(c) (emphasis added). The regulation suggests that retention may sometimes be appropriate, but it does not specify any circumstances. Mem. and Order at 37 (Feb. 5, 1991).

In the instant case, the government proffered no factual grounds or evidence to support its finding that plaintiff was not entitled to retention and rehabilitation. In its Memorandum and Order of February 5, 1991, this court concluded that defendants' decision to discharge plaintiff for misconduct based on drug abuse, pursuant to AFR 39–10, para. 5–49(c), was arbitrary and capricious and an abuse of discretion for the following reasons:

(1) Paragraph 5–49(c) contains no controlling standards for determining the circumstances and factors to be weighed in ascertaining when an NCO should be offered probation and rehabilitation in lieu of discharge. Without such standards defendants' conduct was inherently arbitrary.

(2) There is nothing in the administrative record that could possibly support an inference that defendants weighed and considered any evidence whatever in arriving at their decision to discharge plaintiff rather than offer him probation and rehabilitation, other than evidence as to whether he ingested marijuana on March 20, 1986.

(3) There is nothing in the administrative record that could possibly support an inference that defendants followed the law specified by the Department of Defense that "the potential for rehabilitation and further useful military service shall be considered by the Separation Authority.... If separation is warranted despite the potential for rehabilitation, consideration should be given to suspension of the separation, if authorized." 32 C.F.R. Pt. 41, App. A, Pt. 2, § A(2)(b). *See also*, factors suggested in Section A of Pt. 2 that may be considered on the issue of retention or separation.

(4) The administrative record before the court offers no rationale for the actions taken by defendants.

Mem. and Order at 55–56 (Feb. 5, 1991).

 Not only did the Air Force fail to follow its own policy of carefully considering whether to discharge plaintiff or retain him with rehabilitation and probation, but it also flouted the controlling Department of Defense regulation favoring rehabilitation and probation. Regulations instituting the military drug and alcohol abuse program and regulations governing administrative separations were both promulgated by the Department of Defense; the regulations by their terms apply to all branches of the military. *See* 32 C.F.R. §§ 41.2 and 62.2 (1991). Department of Defense regulations control when they conflict with regulations promulgated by the Air Force.

---

**16.** This court has been hearing motions in this case since 1987.

Mem. and Order at 20 (Feb. 5, 1991); *see Casey v. United States,* 8 Cl.Ct. 234, 239 (1985); *Simmons v. Brown,* 497 F.Supp. 173, 178 (D.Md.1980).

The conflict between the regulations arises from the statute authorizing the Department of Defense's drug and alcohol abuse policy, which states that: "[t]he Secretary of Defense shall prescribe regulations ... [to] treat, and rehabilitate members of the armed forces who are dependent on drugs or alcohol." 10 U.S.C. § 1090 (1988). Congress embraced a policy of rehabilitating members of the armed forces dependent on drugs. *Id.* Congress delegated to the Secretary of Defense the responsibility of developing programs and regulations to effectuate that rehabilitation. Pursuant to congressional mandate, the Department of Defense promulgated regulations in 1982 providing that:

(a) It is the goal of the Department of Defense to be free of the effects of alcohol and drug abuse; of the possession of and trafficking in illicit drugs by military and civilian members of the Department of Defense; and of the possession, use, sale, or promotion of drug abuse paraphernalia. Alcohol and drug abuse is incompatible with the maintenance of high standards of performance, military discipline, and readiness. Therefore, it is the policy of the Department of Defense to:

\* \* \* \* \* \*

(5) Treat or counsel alcohol and drug abusers and rehabilitate the maximum feasible number of them.

(6) Discipline and/or discharge drug traffickers and those alcohol and drug abusers who cannot or will not be rehabilitated, in accordance with appropriate laws, regulations, and instructions.

32 C.F.R. § 62.4(a)(5) & (6) (1991). These regulations directly conflict with Air Force regulations that—as defendants read them—view probation and rehabilitation as an exception to a general rule requiring summary discharge. One cannot reconcile the "rehabilitate-if-possible" policy expressed in 32 C.F.R. § 62.4(5) and (6) with the "retention-is-not-normally-appropriate" policy expressed in AFR 39–10 § 5–49(c). *See* Mem. and Order at 33–34 (Feb. 9, 1991). Yet the Air Force is bound by the more general Department of Defense regulations and cannot create exceptions to them. *See* Mem. and Order at 20 (Feb. 5, 1991). As this court has noted, C.F.R. § 62.4(a)(5) & (6) says rather clearly that it is the policy of the Department of Defense to "treat or counsel ... drug abusers and rehabilitate the maximum feasible number of them 'and it will only discharge' drug abusers who cannot or will not be rehabilitated...." Mem. and Order at 21 (Feb. 5, 1991).

Although this court determined that the Air Force was not required to *offer* plaintiff probation and rehabilitation, it held that the Air Force was required to seriously *consider* probation and rehabilitation before ordering discharge. Mem. and Order at 29 (Feb. 5, 1991); *see* 32 C.F.R. Pt. 41, App. A, Pt. 1, §§ K & K(1)(a)(3) (1991) (entitled "Misconduct: Commission of a Serious Offense"). Plaintiff's discharge for misconduct was pursuant to the "serious offense" category of section K(1)(a)(3), under which a member of the military may be discharged for drug abuse. Mem. and Order at 29 (Feb. 5, 1991). Under this category, rehabilitation and counseling efforts are not mandatory prior to discharges for misconduct. However, when discharge is based on misconduct within the "serious offense" category, there must be a finding that "[t]he specific circumstances of the offense warrant separation." Mem. and Order at 29 (Feb. 5, 1991); *see* 32 C.F.R. Pt. 41, App. A, Pt. 1, § K(1)(a)(3)(a) (1991).

Department of Defense policy further provides that because "[t]here is a substantial investment in the training of persons enlisted or inducted into the Military Services, ... [a]s a general matter, reasonable efforts at rehabilitation should be made prior to initiation of separation proceedings." 32 C.F.R. Pt. 41, App. A, Pt. 2, § A(2)(a) (1991). Section A of Part 2 specifies: "[u]nless separation is mandatory, the potential for rehabilitation and further useful military service shall be considered by the Separation Authority and, where appli-

cable, the Administrative Board. If separation is warranted despite the potential for rehabilitation, consideration should be given to suspension of the separation, if authorized." 32 C.F.R. Pt. 41, App. A, Pt. 2, § A(2)(b) (1991). Section A of Part 2 also suggests various factors to be considered regarding retention or separation.[17]

The above authorities make plain that Department of Defense policy weighs heavily against summary discharge: "the clear Department of Defense policy is to rehabilitate members of the military and retain them if at all possible, and to determine eligibility for rehabilitation based on consideration both of the effects on the service of the rehabilitation and retention of a member and of the individual service member's character, military record, and likelihood of reform." Mem. and Order at 30 (Feb. 5, 1991). Defendants' position in this case was contrary to this strong, clear expression of Department of Defense policy.

The administrative record developed by defendants also does not show that plaintiff's individual characteristics were seriously considered. *Id.* at 35, 51. The Board's recommendation that the Air Force discharge plaintiff with no offer of probation and rehabilitation had as its *"sole* reason the voluntary (and therefore wrongful) ingestion of marijuana on a single occasion by one who happened to be an NCO." *Id.* at 48. Based upon a careful review of the record, this court concluded that plaintiff was recommended for discharge without offer of probation and rehabilitation "not as a thoughtful, considered response to his individual circumstances, military record, and transgression, as required by Department of Defense regulations, but in order to send a message to the rest of the troops.... [A]ll of the evidence indicates that the alleged negative effects on the service from retention of plaintiff were giv-

en predominant, if not preemptive, weight...." *Id.* at 51–52.

Noting that the Air Force's "stubborn, intransigent position [was] promptly and enthusiastically rubber-stamped without any apparent critical evaluation by every reviewing agency up the line," this court made the following findings:

(1) Defendants clearly intended to follow what they believed should be the policy of the Air Force, namely, that NCOs should *always* be discharged for wrongful drug usage—whether or not that policy violates Department of Defense regulations.

(2) Although AFR 39–10, para. 5–49(c), itself specifies that "careful consideration [should] always be given before keeping noncommissioned officers," defendants decided that *no consideration* whatever should be given to anything except whether or not a controlled substance was wrongfully used.

(3) Assuming, *arguendo*, that AFR 39–10, para. 5–49(c), is not inconsistent and can be harmonized with the applicable Department of Defense regulation, 32 C.F.R. Pt. 41, App. A, Part 2, § A, there were no standards whatever by which agency discretion could be guided in applying the questioned paragraph of AFR 39–10.

(4) Defendants, in a gross display of exalting form over substance, received and "admitted in evidence" a complete record of plaintiff's undeniably exemplary seventeen years of military service plus extensive, and totally uncontradicted, testimonials of his good character and professionalism—and then apparently failed to consider any of this evidence. This practice was clearly designed to give the appearance of a good faith hearing to determine what administrative action, if any, should be taken; in fact, it could only have been a procedural device

---

**17.** The factors include: (1) the seriousness of the circumstances of the offense and the effect of the member's continued retention on military discipline, good order, and morale; (2) the likelihood of continuation or recurrence of the behavior; (3) the likelihood that the member will be a disruptive or undesirable influence on oth-

er members of the military; (4) the ability of the member to perform duties effectively in the present and future, including potential for advancement or leadership; (5) the member's rehabilitative potential; and (6) the member's entire military record. 32 C.F.R. Part 41, App. A, Part 2, §§ A(2)(d)(1)–(6) (1991).

to give the appearance of a due process hearing but intended to be a factual hearing limited to the one question of whether marijuana had been ingested.

To label this total subversion of the letter and spirit of the law as "arbitrary and capricious" and an "abuse of discretion" can only be denominated as charitable.

*Id.* at 48–50.

For the following reasons, the court concludes that the government's decision to discharge plaintiff and to defend the discharge were not substantially justified: (1) the clarity of existing Department of Defense regulations; (2) the lack of any evidence showing careful consideration of rehabilitation or probation; (3) the conflict between defendants' litigation position and the Air Force's own written regulations; (4) the length of the proceedings before this court and the administrative agency; and (5) the absence of any factors that reasonably justify the government's position. Thus, the substantial justification exception does not apply to this case and will not operate to foreclose plaintiff's entitlement to collect attorney fees under EAJA.

### c. *Plaintiff's Request for Fees in Excess of the Maximum Amount Under EAJA*

Once the court has decided to award attorney fees under EAJA, it must determine the rate of compensation and the number of hours to compensate. Plaintiff has requested an amount in excess of the statutory $75 per hour, based upon counsel's alleged expertise in law relating to the military. Defendants contest counsel's special qualifications and therefore oppose an enhanced fee.

 Under EAJA a prevailing party is entitled to "reasonable" attorney fees. 28 U.S.C. § 2412(d)(2)(A) (1988). What constitutes a "reasonable" fee depends on

> prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such

as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. 2412(d)(2)(A) (1988). In *Pierce v. Underwood,* the Supreme Court clarified the "special factor" language that can be used to justify EAJA fees of more than $75 per hour. 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). It held that Congress intended courts to deviate from the statutory rate only where an attorney has "some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* at 572, 108 S.Ct. at 2554. To illustrate what qualifies as a "distinctive knowledge or specialized skill," the Court mentioned "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* at 572, 108 S.Ct. at 2554. However, other factors such as the novelty or difficulty of the issues, the undesirability of the case, the work and ability of counsel, the result obtained, or the contingent nature of the fee are insufficient to justify enhancing the $75 per hour limit. *Id.* at 572, 108 S.Ct. at 2554; *see also National Wildlife, supra,* 870 F.2d at 547. Nonetheless, difficulty in finding qualified counsel may justify a higher fee. *Id.* at 547.

The Ninth Circuit applied *Pierce* in *Pirus v. Bowen,* holding that attorneys who have developed a practice specialty in social security law may qualify for market rate fees under EAJA, where other requirements are met:

> The expertise and skills that [social security practitioners] develop[ ] are akin to those developed by a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of a particular class of clients ... and of how those needs could best be met under the existing statute and regulations.

869 F.2d 536, 541 (9th Cir.1989). *See also Cervantez, supra,* 739 F.Supp. at 524–25 (EAJA fees awarded in excess of $75 per hour in case involving social security claim); *Golden Gate Audubon Soc., Inc. v.*

*Army Corps of Engineers,* 738 F.Supp. 339, 344 (N.D.Cal.1988) (hourly rate of $160 awarded under EAJA because environmental practice and particular case demanded "high level of expertise with difficult, even opaque statutes and regulations...."). The *Golden Gate* court noted that "this is not the type of litigation that a general practitioner—even a highly skilled one— could have successfully pursued without spending large amounts of time gaining background preparation and specialized knowledge." *Id.*

Similarly, in *National Wildlife,* the attorney requesting fees was an environmental specialist "who had devoted himself to the complex regulatory issues involved in hydropower regulation and public land forestry." 870 F.2d at 547. The Ninth Circuit held that this specialty required knowledge not readily available to an attorney possessing "generally lawyerly knowledge and ability" and therefore qualified counsel to receive a higher EAJA fee. *Id.*

Although patent, social security, and environmental litigation justify enhanced fees, immigration law does not. *Ramon–Sepulveda v. I.N.S.,* 863 F.2d 1458, 1462–63 (9th Cir.1988). Plaintiff in *Ramon–Sepulveda* argued that immigration law should be classified as a practice specialty because the Ninth Circuit had characterized immigration law as " 'second only to the Internal Revenue Code in complexity.' " *Id.* at 1462–63 (quoting *Castro–O'Ryan v. United States Dep't of Immigration and Naturalization,* 821 F.2d 1415, 1419 (9th Cir.1987), *superseded on other grounds,* 847 F.2d 1307 (9th Cir.1988)). The Ninth Circuit disagreed, holding that even if immigration law could be classified as a practice specialty, the legal problem posed in that particular case required no " 'distinctive knowledge' " or " 'specialized skill' " as required by *Pierce. Id.* at 1463. Instead, the court found that plaintiff's claim involved "established principles of res judicata—principles with which the majority of attorneys are, or should be, familiar." *Id.* The court added that there was no shortage of attorneys in Los Angeles who were qualified to assist aliens in deportation proceedings. *Id.*

In the application for fees and costs in this case, counsel seeks an hourly amount in excess of the statutory maximum of $75 per hour because of his alleged expertise in military matters. In his declaration, counsel states:

> In the *Poole* case, I was required to have an extensive understanding of the Air Force Regulations, the Department of Defense Directives, and the federal laws involving military discharges and federal relief. I do not believe my specialized knowledge in this area would have been known to a great number of attorneys practicing in this state.... I believe that in the context of matters within the military expertise, there are not attorneys who charge a fee of less than $150.00 per hour.

Decl. L.N. Hiken in Supp. of Mot. for Expenses and Att'y Fees at 5–6. Plaintiff supports his request for an enhanced fee with declarations of two attorneys who state that plaintiff's counsel is an expert in military law and that he deserves a higher fee.

Defendants contend that plaintiff is not entitled to fees at a rate above $75 per hour because his "cursory" declaration fails to convincingly show that plaintiff's case involved the type of distinctive knowledge or specialized skills required to justify an enhanced fee. Defendants assert that the only knowledge and skill required were an ability to read and interpret "a couple of" Air Force regulations and portions of the Code of Federal Regulations. According to defendants, this knowledge "certainly ... was within the ability of a skilled attorney with no particular expertise in military administrative proceedings, and the complexity of the matter in no way approaches the kind of specific and highly complex subject matter which warranted a higher award in *Pirus.*"

This court agrees with defendants that interpretation of federal statutes and regulations does not require "knowledge not readily available to one possessing 'general lawyerly knowledge and ability.' " *See Pierce, supra,* 487 U.S. at 572, 108 S.Ct. at

2554 (quoting *National Wildlife, supra,* 870 F.2d at 547). Plaintiff has failed to demonstrate that the work he performed in this case demanded knowledge and skills not possessed by most attorneys. Moreover, no court has held that legal services pertaining to military matters may constitute a practice specialty warranting excess fees. Even if military law were a specialty, the court must consider the number of attorneys qualified in military law practice. Plaintiff has not shown a dearth of attorneys capable of adequately representing plaintiff. Because plaintiff's case did not involve specialized skill or knowledge, most attorneys could have performed the work effectively.

■ For the above reasons, plaintiff's request for a fee enhancement should be denied. However, plaintiff's counsel should be awarded the EAJA maximum of $75 per hour for his services plus an inflation or cost of living adjustment.[18] The Ninth Circuit has consistently held that the EAJA hourly rate may be adjusted upwards to reflect cost-of-living increases. *See, e.g., Russell v. Sullivan,* 930 F.2d 1443, 1446 (9th Cir.1991) (inflation justified hourly rate in excess of $75; proper rate derived by "multiplying the $75 cap by the most recent consumer price index for urban consumers, then dividing by the consumer price index figure in October, 1981, the date that the $75 cap was imposed by Congress"); *Pirus, supra,* 869 F.2d at 540 n. 6 (Secretary of HHS "cannot seriously dispute" that district judge may adjust hourly rate to reflect increases in cost-of-living); *Ramon–Sepulveda v. I.N.S.,* 863 F.2d 1458, 1462 (9th Cir.1988) (inflation between 1981 and 1988 justified $95 hourly rate under EAJA calculated using consumer price index formula). The most recent consumer price index for urban consumers is 411.5. Applying that formula,[19] plaintiff's counsel is entitled to an hourly rate of $110.26.

**D. Objections to Specific Hours Requested**

■ Having determined that plaintiff deserves an award of attorney fees at the above rate, the court must then determine the exact number of hours to be compensated. Plaintiff claims 73.80 hours of compensable work. Defendants object to certain of these hours as unrelated to proceedings before this court. More precisely, defendants do not believe plaintiff should be paid for efforts before administrative agencies.

The Supreme Court has held that where "administrative proceedings are intimately tied to the resolution of the judicial action and are necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Sullivan v. Hudson,* 490 U.S. 877, 888, 109 S.Ct. 2248, 2255, 104 L.Ed.2d 941 (1989); *see also Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986). Recent Supreme Court cases strictly limit EAJA compensation to those proceedings "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Hudson, supra,* 490 U.S. at 892, 109 S.Ct. at 2257; *see also Melkonyan v. Sullivan,* — U.S. —, 111 S.Ct. 2157, 2162, 115 L.Ed.2d 78 (1991); *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 2666–67, 110 L.Ed.2d 563 (1990). Courts have defined "civil action" as court and administrative proceedings necessary to the completion of a court action. *See, e.g., Hudson, supra,* 490 U.S. at 892, 109 S.Ct. at 2258; *Melkonyan, supra,* 111 S.Ct. at 2162 (defining "the narrow class of qualifying administrative proceedings to be those 'where a suit has been brought in a court,' *and* where 'a formal complaint within the jurisdiction of a court of law' re-

---

**18.** At a conference in chambers on October 25, 1991, defense counsel conceded that, assuming plaintiff's counsel is awarded attorney fees, he deserves $75 per hour.

**19.** $\frac{\$75/hour \times 411.5 \ (CPI\text{--}U \ for \ Oct., \ 1991)}{279.9 \ (CPI\text{--}U \ for \ Oct., \ 1981)}$

mains pending and depends for its resolution upon the outcome of the administrative proceedings") (emphasis in original); *Ardestani v. I.N.S.,* — U.S. —, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (holding that administrative deportation proceedings do not qualify for an award of attorney fees under EAJA). Thus, "where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level." *Melkonyan, supra,* 111 S.Ct. at 2162; *see also Finkelstein, supra,* 110 S.Ct. at 2666; *Hudson, supra,* 109 S.Ct. at 2258.

Cases that have allowed compensation for work performed before an administrative agency have done so where those administrative proceedings were ordered on remand by the district court. *See, e.g., Hudson, supra,* 490 U.S. at 892, 109 S.Ct. at 2258 (claimant entitled to EAJA fees for representation at administrative proceedings held pursuant to district court remand of action). Because the court in *Hudson* ordered administrative proceedings on remand, they were an "integral part of the civil action" and were "crucial to the ultimate vindication of [plaintiff's] rights." *Id.* at 889, 892, 109 S.Ct. at 2256, 2258. However, none of the courts in these cases endorsed the view that proceedings on remand were the exclusive administrative setting in which EAJA fees may be awarded.

In this case, plaintiff's administrative appeal before the AFBCMR was neither a remand proceeding nor mere exhaustion of administrative remedies. Plaintiff brought his case to this court on July 16, 1987, pending resolution of his administrative appeal. At that time, plaintiff had exhausted his administrative appeals, and jurisdiction lay in this court. The court granted plaintiff a temporary restraining order on July 21, 1987, that was subsequently extended to August 10, 1987. On August 7, 1987, the court denied plaintiff's motion for preliminary injunction. Thus, plaintiff was discharged from the Air Force on August 11, 1987. On September 25, 1987, the court, while retaining jurisdiction over the matter, stayed further proceedings pending the outcome of plaintiff's petition to the AFBCMR. That appeal was not an exhaustion of administrative remedies. Indeed, the appeal was adjudicated on September 12, 1989—over two years after plaintiff's discharge was ordered by the Secretary. The AFBCMR appeal was exclusively a post-discharge review that, if successful, would have resulted only in plaintiff's constructive reinstatement for salary purposes and the appropriate correction of his record. *See Schwartz v. Covington,* 341 F.2d 537, 538 (9th Cir.1965). Plaintiff would nevertheless have been wrongfully discharged and have lost his livelihood for the period of time between his wrongful discharge and AFBCMR review.

Had plaintiff's AFBCMR appeal succeeded, further proceedings in this court would have been unnecessary. The AFBCMR appeal was, therefore, "intimately tied to the resolution of the judicial action." *Hudson, supra,* 490 U.S. at 888, 109 S.Ct. at 2255. The AFBCMR appeal was, thus, akin to a remand proceeding: suit had been brought in a court of law, remained pending, and "depend[ed] for its resolution upon the outcome of the administrative proceedings." *Melkonyan, supra,* 111 S.Ct. at 2162. Just as work performed during administrative proceedings upon remand is compensable under EAJA, work performed in applying to and pursuing the case before the AFBCMR is compensable. These services comprise hours claimed for: June 30, 1987 (1 hour); April 27, 1989 (0.25 hour); April 28, 1989 (0.5 hour); May 25, 1989 (6 hours); and June 5, 1989 (1 hour). The sum of compensable time before the administrative body is 8.75 hours.

However, all the hours plaintiff claimed for work done prior to June 29, 1987—the date when the Secretary approved plaintiff's discharge—were not spent in the context of a remand proceed-

ing or anything analogous thereto. Before plaintiff's proposed discharge was approved by the Secretary, it had no force and could not be executed. Thus, the court could grant no remedy and had no jurisdiction. Efforts before the Secretary's approval were spent in an attempt to influence the administrative outcome and were akin to an exhaustion of administrative remedies. These hours, totaling 21.0, are not compensable under EAJA.[20]

Thus, in total, twenty-one of the claimed hours are not allowable under EAJA. Plaintiff does, however, merit compensation for the remaining 52.80 hours (73.80 − 21.0). Multiplied by the $110.26 hourly rate calculated above, plaintiff is entitled to $5,821.73 in fees.

### E. *Costs*

Plaintiff has also moved for an award of costs under Rule 292 of Rules for the Eastern District of California ("L.R."). Just as with the attorney fees issue, the Little Tucker Act is silent as to whether the $10,000 cap on federal district court jurisdiction includes amounts sought as costs. There is apparently no published decision in point, presumably because the issue is so closely tied to that of attorney fees that courts have not found separate discussion necessary. Although the fees and costs questions are similar, this court addresses them separately for the sake of clarity.

For the same reasons discussed on the attorney fees issue, *supra,* language in several Supreme Court cases suggests that costs should not be included in the Little Tucker Act calculation. An award of costs constitutes reimbursement for sums that would not have been spent but for the adverse party's maintenance of an action that ultimately proved unsuccessful. Costs thus fall squarely within the Supreme Court's language distinguishing reimbursement from damages: the former is an "expense[ ] that [defendant] should have paid all along and would have borne in the first instance." *School Comm., supra,* 471 U.S. at 370–71, 105 S.Ct. at 2003. Unlike an award of damages, an award of costs is a specie remedy. *Bowen, supra,* 487 U.S. at 895, 108 S.Ct. at 2732. Other courts have so recognized:

> [A]n award of costs … in no way rectifies the grievance initially giving rise to a case; it does not … substitute for a suffered loss. Rather than being compensation, costs … arise solely as incidents of the effort to achieve compensation. The underlying idea is to regain specific monies expended rather than to find a surrogate for what has unfortunately been denied. In that sense, an award of costs …, though monetary, and though utilizing the same currency as a damage award, is more akin to specific relief than to damages traditionally understood.

*Bruch v. United States Coast Guard,* 749 F.Supp. 688, 692 (E.D.Pa.1990).

Accordingly, costs are not to be included in determining whether the $10,000 Little Tucker Act cap has been exceeded. Therefore, because the award of costs does not affect the court's jurisdiction, the court will analyze the merits of plaintiff's specific costs demand.[21]

---

**20.** It is worth noting that although the plaintiffs in *Hudson, Finkelstein,* and *Melkonyan* exhausted their administrative remedies prior to being awarded relief in a federal district court, none of the courts awarded them fees for litigating those administrative proceedings.

**21.** As a preliminary matter, an issue exists as to the timeliness of plaintiff's request for costs. Defendants contend that plaintiff's bill was untimely because it was filed more than ten days after entry of judgment. Upon review of the dates on which filings were made, it does appear that plaintiff's bill of costs was filed one day too late.

However, this court may waive the time limit of L.R. 292(b) under the provisions of L.R. 102(d). Rule 102(d) states that "[t]he Court may make such orders supplementary or contrary to the provisions of these Rules, as it may deem appropriate and in the interests of justice in any particular action." The court's waiver of this rule is appropriate and in the interests of justice. First, plaintiff could have recovered these "costs" under EAJA had he instead classified them as "expenses." Second, a mere one-day delay in filing the application should not divest plaintiff of his recovery.

■ Plaintiff's itemized bill of costs totals $277.77, which includes the following: photocopy charges ($96.37), long distance telephone charges ($12.00), travel expenses ($14.40), postage/shipping charges ($35.00) and court filing fee ($120.00).

The Ninth Circuit has upheld an award of costs under EAJA for telephone calls, postage, air courier and attorney travel expenses. *International Woodworkers of America, AFL–CIO v. Donovan,* 792 F.2d 762, 767 (9th Cir.1986). The court stated that these costs, which are ordinarily billed to a client, are routine under all other fee statutes. *Id.; see Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240, 1244 (9th Cir. 1982) (awarding out-of-pocket costs and expenses in Title VII case within court's discretion), *vacated and remanded on other grounds,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1984). Furthermore, the *Donovan* court noted that the examples set forth in section 2412(d)(2)(A) did not constitute an exclusive list of allowable costs. *Id.* Plaintiff can recover the clerk's fee of $120 under section 2412(a).[22]

Thus, under *International Woodworkers,* plaintiff can recover photocopy charges, long distance telephone charges, travel expenses, and postage/shipping charges because these expenses are costs that are typically billed to a client. Under section 2412(a), plaintiff can recover the clerk's filing fee of $120. Plaintiff is, therefore, entitled to recover his total bill of costs of $277.77.

## IV. CONCLUSION

By reason of the foregoing, IT IS ORDERED:

1. That defendants' motion to transfer this case to the United States Claims Court is denied because this court has subject matter jurisdiction of plaintiff's claims, notwithstanding that the claimed and awarded amounts exceed the sum of $10,000;

2. That defendants' motion to amend the February 21, 1991 judgment herein is denied for the reason that the judgment was proper in all respects and within this court's jurisdiction; and

3. That plaintiff shall recover from defendants attorney fees under EAJA in the sum of $5,821.73, plus costs of $277.77.

---

**22.** Section 2412(a) states that "a judgment for costs, as enumerated in section 1920 of this title ... may be awarded to the prevailing party in any civil action by or against the United States ..." According to section 1920, "[a] judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk ..." 28 U.S.C. § 1920(1) (1988).